2008-NMCA-074
185 P.3d 1067
**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Joel A. FLORES, Defendant–Appellant.**

**No. 27,067.**

Court of Appeals of New Mexico.

Feb. 27, 2008.

Certiorari Denied, No. 31,005,
April 23, 2008.

Gary K. King, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

Fredlund & Bryan, Jon C. Fredlund, Hobbs, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} The question presented in this case is whether article II, section 10 of the New Mexico Constitution requires a police officer who is engaged in an investigative procedure commonly called a "knock and talk" to first advise a person of his right to deny consent to search before the police officer can obtain a valid consent to search the person's home. We conclude that such advice is not constitutionally required and affirm the order of the district court denying Defendant's motion to suppress.

## FACTS AND BACKGROUND

{2} Defendant entered a conditional plea to drug charges, reserving the right to appeal the district court's denial of his motion to suppress. We summarize the evidence from the suppression hearing in the light most favorable to the district court order. *See State v. Cline,* 1998–NMCA–154, ¶ 6, 126 N.M. 77, 966 P.2d 785 (stating that in reviewing a district court ruling on a motion to

suppress, we view the evidence in the light most favorable to the prevailing party).

{3} Agents of the Pecos Valley Drug Task Force arrested an individual for trafficking cocaine. That person identified Defendant as his source of cocaine, and the agents decided to contact Defendant. Agents Martinez and Cisneros went to Defendant's home dressed in plain clothes with their badges on chains around their necks and their guns holstered at their sides. Agent Martinez knocked on the front door, and when Defendant's wife answered, the officers identified themselves and asked if they could speak with Defendant. Defendant's wife answered, "one second," and went to the bedroom, where Defendant was sleeping. While waiting outside the front door, Agent Martinez saw two women sitting on the living room couch, and one of them invited the agents inside the house. The agents then went into the house and waited inside the front door. Defendant came out of his bedroom and recognized Agent Martinez. Defendant had known Agent Martinez for some time and knew he was a police officer. The agents asked Defendant if they could speak to him outside the house. Defendant agreed and went outside to his front yard with the two agents. Defendant was asked, not ordered, to go outside, and once outside, the conversation was conducted in normal, casual speaking tones.

{4} Outside, Agent Martinez advised Defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and he agreed to speak with the agents. By this time, up to four additional officers had arrived, but they remained in the yard and did not participate in questioning Defendant. Defendant was told that the officers had come to his house because his name had been provided to them as someone who was selling drugs in the area. Defendant was asked if he had any drugs, and Defendant admitted he had an "8–ball" of cocaine inside his home. Asked if he would agree to show the officers where the drugs were located inside the house, Defendant agreed and added that he also had a gun in his bedroom. Defendant then took the two agents inside his home and while he showed one agent where the cocaine and a digital scale were located, the other agent

retrieved the gun from the bedroom. Defendant was then placed under arrest and transported to the detention center.

{5} Agent Martinez testified that the procedure used in this case was a police practice he termed a "knock and talk," in which police go to a suspect's home in an attempt to gain his cooperation. In this case, that meant seeking consent to search Defendant's home. Agent Martinez said that the technique is usually used when the agents do not believe they have sufficient information to establish probable cause for a search warrant.

{6} Defendant makes two arguments on appeal. First, he argues that because the initial entry into his home was without a warrant and without a valid consent, all of his statements and all evidence obtained following that initial entry must be suppressed as fruit of the poisonous tree. Second, he argues that due to the inherently coercive nature of the "knock and talk" investigative procedure, article II, section 10 of the New Mexico Constitution required the police officers to advise him of his right to refuse consent. Lacking this advice, he asserts that the consent he gave to search his home was invalid and that all evidence discovered in the search of his home must be suppressed. Both arguments were raised in Defendant's motion to suppress, which the district court denied.

## DISCUSSION

{7} We summarily dispose of Defendant's first argument. Defendant argues that all evidence discovered after the initial entry of the agents into his home must be suppressed as fruit of the poisonous tree because the agents did not have the consent of a person having actual authority to permit them to enter and it was therefore unconstitutional. However, this argument overlooks the finding of the district court that Agents Martinez and Cisneros simply entered Defendant's home and stood by the front door, waiting, until Defendant appeared and agreed to speak to them outside the house. *See State v. Rector*, 2005–NMCA–014, ¶ 4, 136 N.M. 788, 105 P.3d 341 (stating that in reviewing a district court ruling on a motion to suppress, we defer to the district court's findings of fact to the extent that they are supported by

substantial evidence, and we then review de novo whether the district court correctly applied the law to those facts). Thus, there can be no claim that the agents searched the house or Defendant when they first entered the house. With no search, there can be no claim of an unlawful search. In *State v. Burdex*, 100 N.M. 197, 202–03, 668 P.2d 313, 318–19 (Ct.App.1983), police officers had entered the defendant's apartment the day before they executed a search warrant for the premises, but the record was devoid of any showing that the officers conducted a search of the premises before executing the warrant or that the warrant was predicated upon observations made during the first entry. We therefore concluded there was no constitutional violation because "there was no evidence of a search prior to obtaining the warrant." *Id.* at 203, 668 P.2d at 319. We reach the same conclusion in this case. Since the agents neither sought nor obtained any evidence as a result of their initial entry into Defendant's home, there is no basis to apply the exclusionary rule.

{8} We thus turn to Defendant's second argument regarding Defendant's state constitutional challenge. Defendant acknowledges that the "knock and talk" procedure is valid under the United States Constitution. *See State v. Nyce*, 2006–NMSC–026, ¶ 23, 139 N.M. 647, 137 P.3d 587 (noting that the "knock and talk" investigative technique is consistent with the Fourth Amendment); *see also United States v. Cruz–Mendez*, 467 F.3d 1260, 1264 (10th Cir.2006) (noting cases from various federal circuits that conclude that the knock and talk procedure does not violate the Fourth Amendment). However, Defendant asks us to hold that under article II, section 10, when a police officer uses a "knock and talk" investigative procedure, he must first advise a person of his right to deny consent to search in order to obtain a valid consent to search the person's home. Defendant asserts that our state constitution requires such advice because a "knock and talk" is inherently coercive. In other words, Defendant asks us to hold that consent to search one's house is invalid per se under the New Mexico Constitution unless an accused is first told that he has a right to withhold consent. We decline to adopt such a rule.

{9} In addressing Defendant's argument that our state constitution should afford greater protection than the Federal Constitution, we follow the interstitial analysis adopted in *State v. Gomez*, 1997–NMSC–006, ¶¶ 19–22, 122 N.M. 777, 932 P.2d 1. Pursuant to *Gomez*, our inquiry is (1) whether the right being asserted is protected under the Federal Constitution, (2) whether the state constitutional claim has been preserved, and (3) whether there exists one of three reasons for diverging from federal precedent. *Id.* ¶ 19; *see State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 6, 130 N.M. 386, 25 P.3d 225. If the Federal Constitution affords a defendant the protection he seeks, we do not examine his state constitutional claim. *Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1; *see Cardenas–Alvarez*, 2001–NMSC–017, ¶ 7, 130 N.M. 386, 25 P.3d 225. As we have already noted, the "knock and talk" procedure does not violate the Fourth Amendment, and Defendant does not argue to the contrary.

{10} We therefore proceed to the second question, namely, whether Defendant preserved his claim that article II, section 10 of the state constitution affords greater protection than the federal constitution. Article II, section 10 has been construed in numerous instances as providing broader protections than the Fourth Amendment. *See State v. Granville*, 2006–NMCA–098, ¶ 14, 140 N.M. 345, 142 P.3d 933 (collecting cases in which article II, section 10 has been construed as providing broader protections than the Fourth Amendment), *cert. quashed*, 2007–NMCERT–012, 143 N.M. 214, 175 P.3d 308; *State v. Baca*, 2004–NMCA–049, ¶ 29 n. 2, 135 N.M. 490, 90 P.3d 509 (citing cases under article II, section 10 providing more protective state constitutional relief than that provided by the federal constitution). Defendant cited to article II, section 10 in his motion to suppress and the facts necessary to decide the question were subsequently developed in the evidentiary hearing. This is all that was necessary to preserve Defendant's argument for our review. *Granville*, 2006–NMCA–098, ¶¶ 13–16, 140 N.M. 345, 142 P.3d 933 (concluding that if existing precedent construes a state constitutional provision as providing broader protection than its federal

counterpart, a defendant need only assert the legal issue and develop the facts necessary for the district court to rule on the issue to preserve it for appellate review under the *Gomez* three-step interstitial approach to examining a state constitutional issue).

{11} This brings us to the final inquiry under *Gomez*. We diverge from federal precedent if (1) the federal analysis is flawed, (2) structural differences exist between state and federal government, or (3) there exist distinct state characteristics. *Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1; *Baca*, 2004–NMCA–049, ¶ 30, 135 N.M. 490, 90 P.3d 509. If a defendant shows that one of these circumstances exists that compels greater protection than what is available under the Fourth Amendment, greater relief may be granted under our state constitution. *Baca*, 2004–NMCA–049, ¶ 30, 135 N.M. 490, 90 P.3d 509. Defendant does not make arguments directed to any of these specific circumstances. What Defendant does argue, based on his characterization of a "knock and talk" as "inherently coercive," is that consent to search during a "knock and talk" is invalid unless the suspect is first advised of his right to refuse consent. We construe this argument to mean that Defendant is asserting that the federal analysis of consent in the context of a "knock and talk" is flawed. For the following reasons, we disagree.

{12} The place afforded the greatest protection by the Fourth Amendment is a person's home. *Nyce*, 2006–NMSC–026, ¶ 12, 139 N.M. 647, 137 P.3d 587 ("The privacy of a home is afforded the highest level of protection by our state and federal constitutions."); *State v. Wagoner*, 1998–NMCA–124, ¶ 10, 126 N.M. 9, 966 P.2d 176 (noting that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed" (internal quotation marks and citation omitted)), *overruled on other grounds by State v. Trudelle*, 2007–NMCA–066, 142 N.M. 18, 162 P.3d 173. Therefore, a warrantless search of a home is "presumptively unreasonable, subject only to a few specific, narrowly defined exceptions." *State v. Ryon*, 2005–NMSC–005, ¶ 23, 137 N.M. 174, 108 P.3d 1032; *see State v. Wright*, 119 N.M. 559, 562, 893 P.2d 455, 458 (Ct.App. 1995) (stating that to justify an intrusion into a private residence in the absence of a search warrant or consent, the state must show the intrusion came within a valid exception to the search warrant requirement imposed by the state and federal constitutions). One of the settled exceptions to the warrant requirement is consent. "A search based upon a valid consent is an exception to the requirement for obtaining a search warrant." *State v. Mann*, 103 N.M. 660, 664, 712 P.2d 6, 10 (Ct.App.1985).

{13} The federal ground rules for determining the validity of a consent to search were set forth in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In that case, the United States Supreme Court rejected the assertion that the police were required to advise a defendant of his right to refuse consent before seeking consent to search. *Id.* at 231–33, 93 S.Ct. 2041. Instead, the Supreme Court concluded that "whether a consent to a search was ... the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227, 93 S.Ct. 2041. Our jurisprudence following *Schneckloth* to determine whether a suspect renders valid consent to search is well settled:

The State bears the burden of proving voluntariness, which depends on the totality of the circumstances. Factors considered are the individual characteristics of the defendant, the circumstances of the detention, and the manner in which the police requested consent. The voluntariness of consent involves a three-tiered analysis: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights. In determining whether the consent to search was coerced or made under duress, our case law has looked to analogous case law on coerced confessions. Ultimately, the essential inquiry is whether Defendant's will had been overborne.

*State v. Pierce*, 2003–NMCA–117, ¶ 20, 134 N.M. 388, 77 P.3d 292 (internal quotation marks and citations omitted). *See State v.*

*Bidegain,* 88 N.M. 466, 470, 541 P.2d 971, 975 (1975) ("The question of the voluntariness of a consent is one of fact to be determined by the trial court from all the evidence adduced upon this issue. It is for that court to weigh the evidence, determine its credibility or plausability, determine the credibility of the witnesses, and decide whether the evidence was sufficient to clearly and positively, or clearly and convincingly, establish that the consent was voluntarily." (citations omitted)); *State v. Sneed,* 76 N.M. 349, 351, 414 P.2d 858, 860 (1966) ("A search and seizure may be made without a search warrant if the individual freely and intelligently gives his unequivocal and specific consent to the search. The consent is not voluntary if it is the product of duress or coercion, actual or implied. The consent must be proven by clear and positive evidence and the burden of proof is on the state."); *Pierce,* 2003–NMCA–117, ¶ 19, 134 N.M. 388, 77 P.3d 292 ("To be deemed valid, the consent given to search must be voluntary and not a product of duress, coercion, or other vitiating factors." (internal quotation marks and citation omitted)); *State v. Shaulis–Powell,* 1999–NMCA–090, ¶ 8, 127 N.M. 667, 986 P.2d 463 ("To determine the voluntariness of consent, we examine whether the consent was specific and unequivocal, and whether the consent was the result of duress or coercion, in light of the presumption disfavoring the waiver of constitutional rights."); *Mann,* 103 N.M. at 665, 712 P.2d at 11 ("Factual determination of whether a consent to search was voluntarily given, or whether it is the product of duress or coercion, turns upon the facts of each case.").

{14} The foregoing standards are easily applied in the context of consent obtained as a result of a "knock and talk." To be sure, the procedure is easily capable of being abused by the police. However, our existing standards already require our courts to carefully scrutinize the facts in a "knock and talk" case with special care to insure that a constitutionally impermissible level of coercion is not exerted to obtain consent. A consent that is coerced, by explicit or implicit means, by implied threat or covert force, violates not only the Fourth Amendment, but also article II, section 10 of our own constitution. *See State v. Duffy,* 1998–NMSC–014, ¶ 72, 126 N.M. 132, 967 P.2d 807, *modified on other grounds by State v. Gallegos,* 2007–NMSC–007, ¶ 17, 141 N.M. 185, 152 P.3d 828. Following the totality of circumstances approach described in *Schneckloth,* which we follow in New Mexico, courts have been able to determine whether consent has been voluntary or involuntary in the course of a "knock and talk" investigation. *See Scott v. State,* 366 Md. 121, 782 A.2d 862, 875 (2001) (collecting cases).

{15} The only case Defendant cites in support of his position is *State v. Ferrier,* 136 Wash.2d 103, 960 P.2d 927 (1998) (en banc) in which the Washington Supreme Court held that, under the Washington Constitution, when police are engaged in a "knock and talk" investigation, they must first inform the person from whom consent is sought of the right to refuse consent in order to obtain a valid consent to search. *Id.* at 932–33. Every other state court that has been asked to adopt the *Ferrier* rule as a matter of state constitutional law has rejected it. *See Hadl v. State,* 74 Ark.App. 113, 47 S.W.3d 897, 900 (2001); *Scott,* 782 A.2d at 875; *People v. Frohriep,* 247 Mich.App. 692, 637 N.W.2d 562, 566 (2001); *State v. Johnston,* 150 N.H. 448, 839 A.2d 830, 835–36 (2004); *State v. Forrester,* 343 S.C. 637, 541 S.E.2d 837, 841–43 (2001).

{16} In conclusion, while heightened scrutiny must be applied to determine whether consent is voluntary in a "knock and talk" investigation, there is nothing inherent in its use that requires the police to first advise a person of his right to refuse consent in order to obtain a valid consent. We have previously stated that "proof of knowledge of the right to refuse is not required in order to have effective consent." *State v. Valencia Olaya,* 105 N.M. 690, 694, 736 P.2d 495, 499 (Ct.App.1987). Rather, the presence or absence of such knowledge is but one factor to consider in the matrix to determine whether a consent to search is voluntary. This appears to be the approach followed by most other state courts. *See State v. Acinelli,* 191 Ariz. 66, 952 P.2d 304, 308 (Ct.App.1997) ("Whether a defendant knew that he had a right to refuse the request to search is but one factor to be taken into account."); *People*

*v. Mills,* 164 Cal.App.3d 652, 210 Cal.Rptr. 669, 672 (1985) ("Advisement by a law enforcement officer that one has the right to refuse a consent to search is unnecessary to a valid consent[.]"); *Sims v. State,* 743 So.2d 97, 98 n. 1 (Fla.Dist.Ct.App.1999) ("Although knowledge of one's right to refuse a search without a warrant is a factor to be considered in determining whether the consent obtained was freely and voluntarily given, there is no per se requirement that a defendant must be informed of such right." (internal quotation marks and citation omitted)); *People v. Leon,* 311 Ill.App.3d 624, 243 Ill.Dec. 605, 723 N.E.2d 1206, 1214 (2000) ("Further, ignorance of the right to refuse consent does not vitiate the voluntariness of the consent, but is merely one factor to consider when examining the totality of the circumstances."); *State v. Overton,* 596 So.2d 1344, 1353 (La.Ct.App. 1992) ("While the defendant was not verbally informed of his right to refuse to consent to this search, such a warning is not required."); *State v. Steinmetz,* 1998 MT 114, ¶ 18, 288 Mont. 527, 961 P.2d 95 ("However, [t]he police do not have to warn a person of the right to withhold consent.") (alteration in original) (internal quotation marks and citation omitted); *Forrester,* 541 S.E.2d at 842 & n. 5 ("The person giving the consent need not be advised of the right to refuse to allow a search prior to executing a valid consent to search, although the subject's awareness of the right to refuse is a factor in the determination of the voluntariness of the consent.") (quoting *Gray v. State,* 596 P.2d 1154, 1158 (Alaska 1979)).

{17} We hold that the New Mexico Constitution does not require police to advise that consent may be withheld as a prerequisite to obtaining a valid consent to search one's home when engaged in a "knock and talk" investigation as described herein. Furthermore, the district court finding that Defendant gave a valid consent to search his home is supported by substantial evidence. *See Pierce,* 2003–NMCA–117, ¶ 19, 134 N.M. 388, 77 P.3d 292 (stating that on appeal, we review whether substantial evidence supports a district court's finding that consent was voluntary).

**CONCLUSION**

{18} The order of the district court is affirmed.

{19} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD, and JAMES J. WECHSLER, Judges.