This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellant,

v.                                     **No. 29,074**

**JESUS GUTIERREZ,**

    Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross Sanchez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellant

Law Offices of Jennifer J. Wernersbach
Jennifer J. Wernersbach
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

This is an appeal by the State of New Mexico challenging the district court's decision to suppress evidence of contraband seized from a motel room occupied by Defendant. The State's theory is that the police lawfully discovered and seized the contraband based on a series of exceptions to Defendant's Fourth Amendment protections. First, the State argues that the police lawfully targeted Defendant's motel room using the "knock and talk" practice where police go to a suspect's home—or motel room as the case may be—and attempt to gain the suspect's cooperation. *See State v. Flores*, 2008-NMCA-074, ¶ 5, 144 N.M. 217, 185 P.3d 1067. The State next argues that after Defendant opened the door to his room he consented to allow police to enter and search the room. The State finally argues that, once inside the motel room, the contraband was properly discovered and seized based on either the plain view doctrine or the doctrine of search incident to arrest. The district court's decision to suppress was based primarily on the validity of Defendant's alleged consent to allow the police to enter and to search his room. The court's findings and conclusions do not address the plain view doctrine or search incident to arrest. We affirm the district court's decision to suppress because substantial evidence supports the court's conclusion that Defendant did not validly consent and, without consent, the contraband could not have been validly discovered as either in plain view or based on

a search incident to arrest. In affirming on the issue of consent, all other matters are rendered moot.

**BACKGROUND**

Two police officers approached the door of a motel room occupied by Defendant on a Tuesday morning at approximately 7:00 a.m. after they had obtained information that there may have been a party going on inside. Earlier, the police officers had stopped and ultimately searched a man who had left the motel property walking his bicycle. Their search of the man yielded a slip of paper from the man's pocket with the number 231 written on it. When questioned about it, the man allegedly explained to officers that his friend "Jesus" had invited him to a party in that room, but that he had never found the room or any party.

The police officers went back to the motel and questioned the manager about the occupant of room 231. According to the officers, the manager relayed information that Cresencio Gutierrez, with a date of birth in 1955, was the only occupant of the room. However, the uncontroverted evidence below was that Defendant, Jesus Gutierrez, was Cresencio's son and was a known guest in the room. Nonetheless, apparently believing that there may have been an unauthorized guest in the room, the police officers went to the door and knocked to see who was inside.

According to the testimony of Officer Duffy Ryan, he and another officer entered the motel room "right after [Defendant] opened the door." He testified that after entering, he and the other officer, Detective Wilder, identified themselves and asked to see Cresencio and that that was when they saw the contraband. Officer Ryan was in full police uniform and he was displaying his badge. When asked if he had entered with permission, Officer Ryan responded, "Yes." However, he later clarified that he did not ask for permission to enter the room until after he had already placed Defendant under arrest. He also noted that Defendant appeared to have been sleep deprived or "kind of sleepy" at the time he opened the door.

With respect to the reason for arresting Defendant and the details of the subsequent search, Officer Ryan gave somewhat confusing and contradictory testimony. For example, during cross examination he testified that "based [on] our information and . . . experience, they were trespassing, so they were placed under arrest immediately." However, he also testified that the arrest may not have occurred immediately for trespassing. Specifically, he testified that after getting Defendant's name he ran a warrants check and made the arrest only after learning that Defendant had outstanding warrants. But, when asked about "the possession of drug

4

paraphernalia or the criminal trespass," he responded, "Yes, he was under arrest for those also."

Furthermore, when asked to justify some of the specific details of the room search, Officer Ryan's testimony was again uncertain. Even after explaining the search as having been based on a consensual "knock and talk," Officer Ryan said that the reason for the search was that Defendant and the other occupant were trespassing and thus had no expectation of privacy in the motel room.

Based on these facts, the district court found that "[t]he testimony is not clear and positive that consent to enter was specific and unequivocal." It found that, based on the totality of the circumstances, the State had not met its burden of establishing consent to enter the motel room. In its written decision, the court stated that after hearing a knock at approximately 7:00 a.m., Defendant opened the door to a fully uniformed police officer displaying his badge, and another officer displaying his badge. The district court found that it was "not clear how many times both officers knocked, how loudly they knocked, and how long they knocked." It found that officers immediately entered the room and asked for Cresencio Gutierrez. It also found that if Defendant gave consent, he was not clear minded and that any consent was given under duress or coercion given the circumstances of the early morning entry

5

by police. With respect to the "knock and talk" question, the court held that the technique was intended to be "more consensual rather than authoritative," and that "[i]n this case the consensual aspect . . . was not clearly established."

**DISCUSSION**

The right of individuals to be free from unreasonable searches or seizures is grounded upon constitutional protections contained in the Fourth Amendment of the United States Constitution. *State v. Jones*, 114 N.M. 147, 149, 835 P.2d 863, 865 (Ct. App. 1992). Privacy in one's home is afforded the highest level of Constitutional protection. *See State v. Nyce*, 2006-NMSC-026, ¶ 12, 139 N.M. 647, 137 P.3d 587. "[A] motel room is the equivalent of a dwelling for Fourth Amendment purposes and . . . as a registered guest, the occupant is entitled to the same rights he would have possessed had his private residence been searched rather than his hotel room." *State v. Zamora*, 2005-NMCA-039, ¶ 13, 137 N.M. 301, 110 P.3d 517 (internal quotation marks and citation omitted). "Generally, a warrantless search and seizure is per se unreasonable under the Fourth Amendment unless justified by an exception to the general rule." *State v. Cardenas-Alvarez*, 2001-NMSC-017, ¶ 39, 130 N.M. 386, 25 P.3d 225 (Baca, J., specially concurring). "Recognized exceptions to the warrant requirement include exigent circumstances, consent, searches incident to arrest, plain

6

view, inventory searches, open field, and hot pursuit." *State v. Gutierrez*, 2005-NMCA-015, ¶ 11, 136 N.M. 779, 105 P.3d 332 (filed 2004) (internal quotation marks and citation omitted).

The legality of a search questioned in a suppression hearing is generally tested as a mixed question of law and fact wherein we review any factual questions under a substantial evidence standard and we review the application of law to the facts de novo." *State v. Baca*, 2004-NMCA-049, ¶ 11, 135 N.M. 490, 90 P.3d 509. We view the facts in a manner most favorable to the prevailing party. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856.

Here, the State argues that the police officers' entry into Defendant's motel room was consensual, that the contraband was in plain view, or that it was found in a search incident to arrest. In its fact finding capacity the district court determined that, pursuant to Officer Ryan's testimony, police entered Defendant's motel room immediately after the door was opened. We will not second guess this determination of the district court. *See State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789 (stating that "[t]he reviewing court does not weigh the evidence or substitute its judgment for that of the fact finder as long as there is sufficient evidence to support the verdict"). Given this finding, any contraband in the room was necessarily

7

discovered only after the unlawful entry, and thus the plain view exception cannot apply. *See State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286 (stating that "[u]nder the plain view exception to the warrant requirement, items may be seized without a warrant *if the police officer was lawfully positioned* when the evidence was observed" (emphasis added)). The search incident to arrest exception cannot apply either where, as here, the district court found that the arrest was made based on the contraband discovered during the alleged search incident to arrest. For these reasons, we agree with the district court that the dispositive issues in this case are, first, the validity of the consent to enter the motel room and, second, the validity of the "knock and talk."

We also agree with the district court that the voluntariness of Defendant's consent to enter the motel room, to the extent that consent was given, was not established by substantial evidence. The voluntariness of consent is initially a question of fact for the trial court. *State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. We apply a three-tiered test for determining whether consent is voluntary: (1) there must be clear and positive testimony that the consent was unequivocal and specific; (2) the State must establish that the consent was given

without duress or coercion; and (3) the first two elements are viewed with a presumption against the waiver of constitutional rights. *Id.*

Here, Officer Ryan's testimony was not specific as to the facts of what happened and contained several contradictions. When asked if he had consent, Officer Ryan simply responded, "Yes," and gave no further details of what he asked or what specific response was given. Officer Ryan also testified that either he and Officer Wilder entered the motel room immediately, apparently without consent, or that consent was granted only after Defendant was arrested on outstanding warrants. Officer Ryan also testified that he believed he did not need consent because Defendant was trespassing and had no expectation of privacy in the motel room. Under any set of possible scenarios identified by Officer Ryan, in this case, the State points to no evidence to otherwise establish that an unequivocal and specific consent was granted. Thus, we agree with the district court that there was not clear and positive testimony that the consent was unequivocal and specific.

Furthermore, the evidence supports the district court's finding that if consent was given, it was under duress or coercion. Specifically, according to Officer Ryan's testimony, consent was given either after uniformed officers displaying badges had entered the motel room after knocking for an unspecified period of time in the early

morning when Defendant was still sleepy and not clear minded, or after Defendant had already been placed in handcuffs. Thus, the evidence supports the district court's holding that consent was not valid because it was granted under duress or coercion.

Finally, we also agree with the district court's assessment that the officers' conduct in this case was inconsistent with a "knock and talk." A "knock and talk" is a police practice "in which police go to a suspect's home in an attempt to gain his cooperation." *Flores*, 2008-NMCA-074, ¶ 5. The State points to no clear evidence that gaining consent or cooperation was the intent of Officers Ryan and Wilder. In fact, the inconsistent details of Officer Ryan's testimony show other possible intentions including either arresting what he believed to be trespassers, or conducting an investigatory search of a motel room in which he believed Defendant had no expectation of privacy.

**CONCLUSION**

For the foregoing reasons, we affirm the decision of the district court.

**IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

10

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**CELIA FOY CASTILLO, Judge**