This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. **NO. 30,789**

**PEDRO RUBIO OCHOA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Lisa C. Schultz, District Judge**

Gary K. King, Attorney General
William H. Lazar, Assistant Attorney General
Santa Fe, NM

for Appellee

Rodriguez Law Firm
Augustine M. Rodriguez
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**FRY, Judge.**

Defendant appeals from the district court's affirmance of his magistrate court conviction for cockfighting. Defendant argues that the district court erred in denying

his motion to suppress and that there was insufficient evidence to support his conviction for cockfighting. We are not persuaded by his arguments, and we therefore affirm.

**BACKGROUND**

Because the parties are familiar with the factual and procedural background and because this is a memorandum opinion, we do not provide an initial, detailed summary of the proceedings below. We provide details as necessary in our discussion of each issue.

**DISCUSSION**

**Violations of Rule 12-213(A)(3) NMRA**

As an initial matter, we comment on shortcomings in Defendant's brief in chief. Rule 12-213(A)(3) requires that each factual representation be accompanied by citations to the record proper, transcript of proceedings, or exhibits. The brief in chief's recitation of the facts, however, does not include a single citation to the official record proper or the transcript of proceedings. Rule 12-213(A)(3) also requires that the summary of proceedings include a summary of all the facts relevant to the issues presented for review. The brief in chief, however, refers only to selective facts that support Defendant's version of the events. The failure to comply with Rule 12-213(A)(3) in any meaningful way is grounds for striking the brief in chief in its

2

entirety or for other action deemed appropriate by this Court. *See State v. Goss*, 111 N.M. 530, 533, 807 P.2d 228, 231 (Ct. App. 1991) (stating that failure to comply with Rule 12-213 may result in an appellate court declining to address contentions on appeal). Because of Defendant's constitutional right to appeal his conviction, we will review the issues raised on appeal. However, we strongly admonish Defendant's counsel for his failure to follow the rules.

**Motion to Suppress**

We first address Defendant's motion to suppress. Defendant specifically argues that his admission to cockfighting, as well as other physical evidence of cockfighting, should have been suppressed because such evidence was the product of both an unlawful, warrantless detention and a coerced consent to search. Contrary to Defendant's argument, the State maintains that Defendant's encounter with officers was not a coercive detention but instead part of a consensual "knock and talk," during which Defendant and his wife, at different times, gave officers their valid consent to search.

A ruling on a motion to suppress evidence presents a mixed question of law and fact. *State v. Garcia*, 2005-NMSC-017, ¶ 27, 138 N.M. 1, 116 P.3d 72. In reviewing a district court's rulings on a motion to suppress, "[we] review[] factual findings under a substantial evidence standard, viewing the facts in the light most favorable to the

3

prevailing party, and we review de novo whether the district court correctly applied the law to the facts." *State v. Slayton*, 2009-NMSC-054, ¶ 11, 147 N.M. 340, 223 P.3d 337. In addition, we "indulge in all reasonable inferences in support of the district court's ruling and disregard all evidence and inferences to the contrary." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070. For reasons discussed below, we affirm the district court's denial of Defendant's motion to suppress.

**"Knock and Talk" or Unlawful Detention**

At the outset, we recognize that "[t]he [F]ourth [A]mendment . . . is intended to protect the sanctity of a person's home," *see State v. Snedeker*, 99 N.M. 286, 288, 657 P.2d 613, 615 (1982), and that "the privacy of a home is afforded the highest level of protection by our state and federal constitutions." *State v. Moran*, 2008-NMCA-160, ¶ 7, 145 N.M. 297, 197 P.3d 1079 (alteration, internal quotation marks and citation omitted). However, case law provides that officers—without implicating Fourth Amendment protections—may approach a residence, knock on the door, and speak with an occupant who responds to the knocking. *See generally State v. Flores*, 2008-NMCA-074, ¶ 9, 144 N.M. 217, 185 P.3d 1067 ("[T]he 'knock and talk' procedure does not violate the Fourth Amendment[.]"). Because a "knock and talk" does not implicate the Fourth Amendment, officers may engage in a "knock and talk," for example, by going to a suspect's home to attempt to gain his or her cooperation,

4

including obtaining consent to search, even when officers do not have probable cause for a search warrant. *Id.* And in the present case, as the evidence set forth below shows, the officers did just that—engaged Defendant and his wife in a consensual "knock and talk" and, in the course of doing so, obtained their consent to search their home and its premises.

The following evidence was introduced at the suppression hearing. Officers were undertaking an operation in a designated neighborhood grid to gain residents' voluntary compliance with enforcement codes and animal control codes. In the course of this operation and while at a neighboring property, officers noticed a dog tied up in Defendant's yard that appeared to lack access to food, water, and shelter. Based on this observation, officers approached Defendant's residence, knocked on the door, and spoke with his wife, Elida Marquez (Wife). Officer Padilla testified that officers initiated this "knock and talk" at approximately 12:30 p.m., or sometime around lunch time. Because Wife was Spanish-speaking only, Officer Padilla spoke to her in Spanish and explained the officers' concern about the dog. When asked if there were any other dogs on the property, Wife responded that there was another dog behind the residence as well as some chickens in a coop. Officer Padilla asked Wife if officers could walk around the house to look at the other animals, and she gave them

permission to do so. Wife did not accompany officers when they walked behind the house.

While behind the house, officers observed a second dog, which was also restrained and lacked adequate shelter. Officers also noticed a chicken coop containing roosters with their combs and leg spurs cut off. In the same area, officers saw some syringes and a leather strap attached to a pole, a device that was consistent with a tool for conditioning fighting cocks. After making these observations, officers again knocked on Defendant's residence. When Wife again answered, Officer Padilla asked if she had the vaccination papers for the animals. At that time, Wife informed the officers that Defendant takes care of the animals and that he would be home shortly. Officers left the property at around 1:00 p.m. and continued the operation by talking to other neighbors. Officer Padilla testified that after the officers left the property, Wife left her property, presumably either to pick up her kids or Defendant, and that officers did not prevent her from leaving.

At some point, officers noticed that the vehicle in the front of Defendant's home was parked in a different area and from this determined that Defendant had returned home. Officer Padilla testified that they again knocked on the door and this time spoke to Defendant and did so for "maybe a half hour or so" after they had first knocked on the door and talked to Wife. Officer Padilla testified that Defendant was

6

also Spanish-speaking only, so he spoke to him in Spanish and served as a translator for the other officers. Officer Padilla explained to Defendant that officers were conducting an operation to check on animal control and code violations. Officer Padilla testified that Defendant was very cooperative and appeared to know that officers had been there earlier and why, presumably because Wife told him. With Officer Padilla translating, officers asked Defendant about the dogs' condition. Defendant indicated that he was aware of these concerns and, in the officers' presence, immediately remedied the dogs' condition. Officers then asked Defendant about the roosters and their condition. Defendant responded that he collected and cared for the birds, which had been given to him by other people.

Officers then asked for and obtained Defendant's written consent to search. When next asked if he had any cockfighting paraphernalia, Defendant told officers that he had purchased a cockfighting box and invited officers into his house and showed them the box. Defendant also volunteered that he transported his birds to Texas and Mexico and fought them there. With Defendant's permission to do so, officers next looked inside the refrigerator to see if it contained any vitamins or other medication consistent with cockfighting. After finding nothing, officers asked Defendant about a basket on the table containing a syringe, and Defendant indicated

7

it was for his child's medication. Officers then arrested Defendant and, as set forth in Defendant's pleadings below, did so at about 2:00 p.m.

In light of the foregoing evidence, we agree with the State that the officers' encounter with Defendant was in the context of a consensual "knock and talk" encounter rather than a seizure or custodial detention that implicated the Fourth Amendment. "Police contact is consensual so long as a reasonable person would feel free to disregard the police and go about his business, or to decline the officers' requests or otherwise terminate the encounter." *State v. Scott*, 2006-NMCA-003, ¶ 18, 138 N.M. 751, 126 P.3d 567 (alteration, internal quotation marks, and citation omitted). "Possible indicators of a seizure are: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Garcia*, 2009-NMSC-046, ¶ 39, 147 N.M. 134, 217 P.3d 1032 (internal quotation marks and citation omitted).

In this case, the evidence does not show that officers conveyed to Defendant or to Wife—either by physical force or by any other show of authority—that they were not free to walk away during the consensual encounters. To the contrary, Officer Gojkovich testified that, until Defendant's arrest, Defendant was allowed to roam freely and was not detained. We note that rather than trying to extricate himself from

officers, Defendant instead invited the officers inside his home to show them his cockfighting box. Officer Padilla testified that Wife similarly was not detained at any time during her conversation with officers. In addition, the officers left the property after initially speaking with Wife and did not prevent her from leaving the property either to pick up Defendant or her children. Further evidence of the lack of any detention was Defendant's cooperation throughout the "knock and talk."

In sum, contrary to Defendant's assertion that he was "seized" throughout the encounter, the evidence establishes that Defendant was not detained until the very end of the officers' encounter with him, at which time officers arrested him. Because the officers were engaged in a lawful "knock and talk," Fourth Amendment requirements were not triggered. For this reason, it is irrelevant whether or not officers "targeted" Defendant because he owned roosters.

At this juncture, we note that Defendant's brief in chief as well as his motion to suppress reference both the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution in the context of his challenge to the validity of his consent to the warrantless search. To the extent Defendant broadly asserts that he may be entitled to greater protection under the New Mexico Constitution, he provides this Court with no specific argument in support of this assertion. *See State v. Lorenzo P.*, 2011-NMCA-013, ¶ 9, 149 N.M. 373, 249

9

P.3d 85 (limiting our analysis to federal constitutional analysis when the appellant presented no argument on appeal as to why Article II, Section 18 of the New Mexico Constitution may provide him greater due process protection); *State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (stating that "this Court has no duty to review an argument that is not adequately developed"). Nonetheless, *Flores*, 2008-NMCA-074, ¶¶ 8-17, indicates that the New Mexico Constitution does not provide greater protection than that afforded by the federal constitution.

**Consent to Search**

We next address whether Defendant's and Wife's consent to search was valid. For a consent to search to be valid, it must be voluntary and not a product of duress, coercion, or other vitiating factors. *State v. Paul T.*, 1999-NMSC-037, ¶ 28, 128 N.M. 360, 993 P.2d 74. The issue is a factual one that we review for substantial evidence. *Id.* "Ultimately, the essential inquiry is whether [the d]efendant's [or the wife's] will had been overborne." *State v. Pierce*, 2003-NMCA-117, ¶ 20, 134 N.M. 388, 77 P.3d 292. For reasons discussed below, we affirm the district court's ruling that the consent was valid.

Many of the factors that are relevant in assessing that the encounter between Defendant and the officers was consensual are also relevant in determining whether consent was valid. As discussed above, officers obtained Defendant and Wife's

10

consent in the course of a consensual "knock and talk" during which time both were cooperative and never indicated that they wanted officers to leave. During this consensual encounter, both Defendant and Wife consented to a search, and neither withdrew their consent.

Despite the consent that was never withdrawn, Defendant suggests that his will was overborne because officers in a "show of force" stayed on his property "for hours"—from 10:00 a.m. until 5:00 p.m., during which time they interrogated him. The evidence, however, does not support Defendant's view of the incident. Regarding the length of time officers were on Defendant's property, Officer Padilla testified that officers first knocked on Defendant's door and spoke to Wife after 12:30 p.m. or around lunch time and then left until they realized that Defendant had returned home about a half hour or so later, ultimately speaking to Defendant sometime between 1:00 p.m. and 1:30 p.m. Defendant's memorandum in support of his motion to suppress provides that he was arrested at about 2:00 p.m. The foregoing time-frames do not support Defendant's position that officers stayed on his property for hours in a coercive, extended detention. Nonetheless, the length of time is not determinative because there is no indication that Defendant was detained against his will during this time or was in any way interrogated or forced to cooperate. *Cf. State v. Chapman*,

11

1999-NMCA-106, ¶ 21, 127 N.M. 721, 986 P.2d 1122 ("Coercion involves police overreaching that overcomes the will of the defendant.").

Further, to the extent Defendant asserts that his consent was coerced because a language barrier prevented him from understanding what was being asked of him, the evidence again supports a conclusion otherwise. Officer Padilla testified that he translated the officers' communications and that Defendant responded appropriately to the officers' questions and was very cooperative. While Officer Padilla did not characterize his Spanish as "proper," he testified that it was understandable. Officer Padilla similarly testified that Wife responded appropriately to questions, appeared to understand, and engaged him in conversation.

Specific to the consent form, Officer Padilla testified that he translated and fully explained every aspect of the written consent form, which Defendant signed. He testified that Defendant appeared to understand what the form was about and that Defendant did not have any questions. Officer Gojkovich similarly testified that Defendant did not appear to have any questions or have a "questioned look" on his face. When translating the consent form, Officer Padilla told Defendant that he had the right to refuse the officers' request to search his property and that officers wanted to do the search because they suspected him of cockfighting. Officer Padilla also told Defendant that the form was to gain permission for consent to search his property.

While Defendant maintains that Officer Padilla was not very fluent in Spanish, it was within the district court's prerogative to determine that Officer Padilla effectively translated and communicated with Defendant. *See State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (stating that an appellate court reviewing a suppression ruling "[does] not sit as a trier of fact; the district court is in the best position to resolve questions of fact and to evaluate the credibility of witnesses").

We further understand Defendant to argue that the officers' interaction was coercive because they told him that if he told the officers where illegal cockfights were held, he would not be charged. However, it was within the district court's prerogative as fact finder to disbelieve Defendant's assertion that such a promise was made. *See id.* (providing that the district court weighs the evidence). Moreover, the evidence does not support a conclusion that Defendant's actions were influenced by any promise of leniency, given that he apparently provided no information of cockfighting in the area. In sum, based on the foregoing discussion, we hold that Defendant and his wife gave officers valid consent to search their property.

**Sufficiency of the Evidence**

We next address whether the evidence was sufficient to support Defendant's conviction for cockfighting. We review the evidence to determine "whether substantial evidence of either a direct or circumstantial nature exists to support a

verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). Under this standard, "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict." *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993). We do not reweigh the evidence, nor substitute our judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. *Sutphin*, 107 N.M. at 131, 753 P.2d at 1319.

As provided by NMSA 1978, Section 30-18-9(B) (2007), it is "unlawful to train, equip or sponsor a . . . cock for the purpose of having it participate in a fight with another . . . cock . . . for monetary gain or entertainment." In the present case, ample evidence was presented at both the suppression hearing and the bench trial to support Defendant's conviction. We note that the district court, in accordance with the parties' stipulation, incorporated into the bench trial all of the evidence introduced at the suppression hearing.

When officers walked behind Defendant's residence, they observed a chicken coop containing roosters with their combs, spurs, and wattles cut off. Evidence was presented that cockfighters commonly remove these body parts from their birds. In the coop area, officers observed syringes, which were consistent with the practice of

14

injecting fighting cocks with vitamins and drugs to enhance their fighting ability. Also in the coop area, officers noticed a pole with a leather strap, which is a device consistent with a tool used for conditioning fighting cocks. Evidence was also presented that the perches in the coop were raised higher than in ordinary chicken coops, a practice designed to increase the birds' agility. Officers also found knives in Defendant's possession that were of the type that are attached to the legs of fighting cocks. Officer Gojkovich, who had received and conducted law enforcement training about cockfighting, testified that the evidence indicated that Defendant was training roosters to fight. In addition, Defendant showed officers a cockfighting or "rooster box" that he had purchased—a carrying box used for transporting cockfighting tools. Defendant also admitted that he took the roosters to Texas and Mexico and fought them.

Based on the foregoing evidence, we hold that there was sufficient evidence to support Defendant's conviction for cockfighting. *See State v. Sparks*, 102 N.M. 317, 320, 694 P.2d 1382, 1385 (Ct. App. 1985) (defining substantial evidence as that evidence which a reasonable person would consider adequate to support a defendant's conviction). We acknowledge Defendant's assertion that he "informed the officer that he did not participate in cockfights and that the nine roosters he had were gifts" as well as his denial that he admitted to cockfighting. We further acknowledge

15

Defendant's assertion that the absence of any baby chicks on his property shows that he did not participate in cockfighting because if he "was regularly fighting his roosters, he would have needed to be raising more roosters to supplement the ones that were getting killed." These assertions, however, were matters for the district court, as fact finder, to assess. *See generally State v. Estrada*, 2001-NMCA-034, ¶¶ 40-41, 130 N.M. 358, 24 P.3d 793 (providing that this Court does not re-weigh the evidence nor substitute its judgment for that of the trial court provided there is sufficient evidence to support the convictions). In weighing the evidence, it was within the fact finder's prerogative to reject Defendant's version of the events. *See Sutphin*, 107 N.M. at 131, 753 P.2d at 1319 (holding that the fact finder may reject defendant's version of events).

**Other Arguments**

Defendant asserts that officers were required to get an arrest warrant before arresting him at his home for a misdemeanor offense. There is no indication that this particular argument was raised below, and for this reason we need not consider its merits. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that in order to preserve an issue for appeal, the defendant must make an objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon).

In his reply brief, Defendant raised, for the first time, the argument that the applicable statute, Section 30-18-9(B), is void for vagueness. We decline to consider this argument. *Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶ 29, 127 N.M. 282, 980 P.2d 65 (explaining that the appellate court need not consider an argument raised for the first time in a reply brief unless it is directed to new arguments or authorities presented in the answer brief).

**CONCLUSION**

We affirm.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____
**TIMOTHY L. GARCIA, Judge**