This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40307

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**DEBBIE DAWES,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Curtis R. Gurley, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Emily Bowen, Assistant Attorney General
Albuquerque, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellee

## MEMORANDUM OPINION

**BUSTAMANTE, Judge, retired, sitting by designation.**

**{1}** Defendant Debbie Dawes was convicted by a jury in magistrate court of aggravated driving while under the influence of liquor or drugs (.16 or above) (third offense), pursuant to NMSA 1978, Section 66-8-102(D)(1), (F)(2) (2016). Defendant appealed her judgment to the district court, where she moved to suppress evidence related to her arrest. The district court granted her motion. The State appeals, arguing that the arresting officer permissibly questioned Defendant via a "knock and talk" and

that the officer had reasonable suspicion to detain Defendant. We agree, reverse, and remand for proceedings consistent with this opinion.

## BACKGROUND

**{2}** This case arises from an identified citizen call stating that a dark green passenger car was swerving in the roadway on Harper Hill and then turned on Troy King Road in Farmington, New Mexico. The citizen provided a partial license plate number of 18291. Sergeant Kalcich was in the area, received the information, and then pulled over to do research on the call. He guessed the license plate's last two letters were "US" and searched the plate. His search revealed the license plate belonged to a 1997 black passenger car registered to Defendant with the address on Troy King Road, the area where the citizen reported the vehicle had last been seen. After more research, Sergeant Kalcich drove to the address, where he found a dark green passenger car.

**{3}** Sergeant Kalcich knocked on the door of the trailer and Defendant answered the door. He spoke to Defendant for a few minutes before asking her to step outside to conduct an investigation of whether Defendant had driven while intoxicated. The parties agree that Defendant was seized when Sergeant Kalcich asked Defendant to step outside. Defendant was eventually charged and convicted of aggravated driving while under the influence of liquor or drugs, pursuant to Section 66-8-102(D)(1), (F)(2), in magistrate court.

**{4}** Defendant appealed her judgment to the district court, where she moved to suppress evidence related to her arrest. She argued Sergeant Kalcich did not have reasonable suspicion when he seized her and asked her to step out of her home. After a telephonic hearing, the district court granted her motion. The district court determined that "[t]he circumstances in this case did not warrant [Sergeant] Kalcich to approach [Defendant] to conduct an investigation." It also determined that "[e]ven if the [district c]ourt found it necessary to find that [Defendant] was seized, [Sergeant] Kalcich did not have sufficient facts to support reasonable suspicion to seize [Defendant]."

## DISCUSSION

### I.  Standard of Review

**{5}** When reviewing a district court's determination of a motion to suppress, we consider whether its findings of fact are supported by substantial evidence, *State v. Leyba*, 1997-NMCA-023, ¶ 8, 123 N.M. 159, 935 P.2d 1171, viewing the evidence in the light most favorable to the prevailing party. *State v. Jason L.*, 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. We then consider the district court's legal conclusions de novo. *Leyba*, 1997-NMCA-023, ¶ 8.

### II.  Knock and Talk

**{6}** As the parties agree, Defendant was seized when Sergeant Kalcich asked Defendant to step outside, our review is limited to the constitutionality of the interaction between the time when Sergeant Kalcich knocked on the door until he asked Defendant to step outside. The State argues that Sergeant Kalcich permissibly spoke to Defendant on her porch before she was seized because he was using a "knock and talk" procedure, and thus the district court erred when it determined Sergeant Kalcich unconstitutionally approached Defendant's home and questioned her on her porch. We agree.

**{7}** Under both the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution, searches and seizures must be reasonable. *State v. Weidner*, 2007-NMCA-063, ¶ 6, 141 N.M. 582, 158 P.3d 1025. "Warrantless seizures are presumed to be unreasonable and the [s]tate bears the burden of proving reasonableness." *State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 (internal quotation marks and citation omitted).

**{8}** A "knock and talk" is "an investigative technique in which police go to a suspect's home in an attempt to gain the suspect's cooperation." *State v. Lovato*, 2021-NMSC-004, ¶ 18, 478 P.3d 927 (alterations, internal quotation marks, and citation omitted). In *State v. Flores*, 2008-NMCA-074, ¶ 5, 144 NM 217, 185 P.3d 1067, the officer testified that police typically use this technique "when [they] do not believe they have sufficient information to establish probable cause for a search warrant." Knock and talks are constitutionally permissible under both the Fourth Amendment and Article II, Section 10, *State v. Mosely*, 2014-NMCA-094, ¶ 27, 335 P.3d 244, so long as courts "carefully scrutinize the facts . . . with special care to insure that a constitutionally impermissible level of coercion is not exerted to obtain consent." *Flores*, 2008-NMCA-074, ¶ 14. Courts are to assess the totality of the circumstances "to determine whether consent [was] voluntary or involuntary in the course of a 'knock and talk' investigation." *Id.* The interaction at issue was a "knock and talk," and the district court's determination that Sergeant Kalcich could not approach Defendant could only be upheld if Defendant's consent to talk with Sergeant Kalcich—before he seized her when he asked her to step outside—was coerced.

**{9}** We start by noting that the district court made no findings or conclusions about Defendant's consent. Defendant conceded twice at the hearing on her motion to dismiss that that portion of the encounter was consensual and made no argument that her consent was coerced. Sergeant Kalcich identified himself and his department, spoke in an even tone, and asked clear questions. No evidence was presented that he coerced Defendant into speaking to him. We conclude the totality of the circumstances demonstrate the conversation was consensual and constitutionally permissible. *See id.* ¶¶ 3, 17 (upholding a district court's finding of voluntary consent where an officer testified he knocked on the defendant's door and spoke to the defendant).

**{10}** Defendant seems to argue that Sergeant Kalcich needed reasonable suspicion to knock on her door. Knock and talks simply do not require reasonable suspicion, as they are grounded in the consensual nature of the conversation between an investigating

officer and the defendant. *See Lovato*, 2021-NMSC-004, ¶ 18. As we noted before, the constitutional protections for a knock and talk include insuring "that a constitutionally impermissible level of coercion is not exerted to obtain consent," *Flores*, 2008-NMCA-074, ¶ 14, and as such do not require reasonable suspicion.

**{11}** Defendant seems to make an undeveloped argument that the knock and talk was pretextual. She makes no citation to authority or the record proper for her assertion, so we decline to address this argument. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (explaining that where arguments are not supported by cited authority, we presume counsel was unable to find supporting authority, will not research authority for counsel, and will not review issues unsupported by authority); *see also* Rule 12-318(A)(4), (B), NMRA (requiring answer briefs provide argument with citation to authority and the record proper).

### III.     Reasonable Suspicion

**{12}** The district court also determined that Sergeant Kalcich "did not have sufficient facts to support reasonable suspicion to seize [Defendant]." The State argues that Sergeant Kalcich did have reasonable suspicion when he seized Defendant by asking her to leave her residence so he could investigate her for driving while under the influence of intoxicating liquor. We agree.

**{13}** Pursuant to the protections against unreasonable search and seizure, a police officer may, without probable cause, "detain a person to investigate possible criminal behavior, . . . if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Simpson*, 2016-NMCA-070, ¶ 11, 388 P.3d 277 (internal quotation marks and citation omitted). Finally, "[r]easonable suspicion is measured by an objective standard based on the totality of the circumstances." *State v. Leyva*, 2011-NMSC-009, ¶ 59, 149 N.M. 435, 250 P.3d 861; *see id.* ¶ 30. Our review of the district court's determination of reasonable suspicion is de novo. *State v. Robbs*, 2006-NMCA-061, ¶ 9, 139 N.M. 569, 136 P.3d 570.

**{14}** The evidence demonstrates that Sergeant Kalcich had reasonable suspicion to detain Defendant when he asked her to step outside. An identified citizen reported that a dark green passenger car was swerving and driving erratically on the roadway. The report provided a partial license plate of 18291 to dispatch. The citizen described the vehicle as turning north onto Troy King Road, which was headed toward the Troy King Trailer Park. Sergeant Kalcich was in the area, and made a guess of the final two letters of the license plate based on the license plates in the area. His search revealed that a black 1997 passenger car was registered to Defendant on Troy King Road, in the same area that the citizen reported the erratic driver. He found the specific address for Defendant and drove to her trailer, where he found a dark green[1] passenger car in the

---

1The district court's findings of fact was that Defendant's vehicle was black in color. Sergeant Kalcich's testimony was that the registration stated the vehicle was black, but when he arrived the car was dark

driveway.[2] Sergeant Kalcich then knocked on the door of the trailer and Defendant answered. He smelled alcohol coming from her person, her face was flushed, her eyes were droopy and bloodshot, and her responses to his questions were delayed. An investigatory detention and seizure of Defendant was justified because the information provided by dispatch and Sergeant Kalcich's own observations would lead a person of reasonable caution to suspect criminal activity—specifically, driving while under the influence of liquor or drugs—involving the dark green car and Defendant. *See Simpson*, 2016-NMCA-070, ¶ 14. Thus, we reverse the district court's decision that Sergeant Kalcich did not have reasonable suspicion when Defendant was seized.

**CONCLUSION**

**{15}**    We reverse the district court's decisions that Sergeant Kalcich could not speak to Defendant on her porch and that he did not have reasonable suspicion to detain her, and we remand for proceedings consistent with this opinion.

**{16}    IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, sitting by designation**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**

---

green. In his police report—which was not admitted into evidence—he wrote the color was black to match the registration, despite the car being dark green. Thus, the district court's finding that the car was black is unsupported by substantial evidence.

2Sergeant Kalcich also testified that he touched the hood of the car and it was warm, which he believed suggested it had been recently driven. We decline to rely on this assertion because it is not reasonable to assert that the heat of a car can suggest how recently it was driven.