**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2014-NMCA-094

Filing Date:  July 1, 2014

Docket No. 32,653

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.

BRADLEY MOSLEY,

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**SUTIN, Judge.**

**{1}**     Defendant Bradley Mosley pleaded no contest to trafficking by possession with intent to distribute cocaine.  The incriminating evidence was discovered in Defendant's apartment by police who had gained entry by means of a "knock-and-talk."  Defendant's trial counsel moved to suppress the evidence on the grounds that police entered Defendant's apartment without consent or a warrant and that they lacked probable cause to conduct a knock-and-talk.  The district court denied the motion, and in his plea agreement, Defendant reserved the

1

right to appeal the suppression ruling.

**{2}** Different from what he argued in the district court, Defendant argues on appeal that the district court should have suppressed the evidence on the ground that the police exceeded the scope of his consent. As an alternative to his suppression argument, Defendant raises an ineffective assistance of counsel claim related to his counsel's failure to move for suppression on the ground that the police exceeded the scope of his consent to the entry by traversing the hallway and the bedroom. We conclude that Defendant's argument regarding the scope of consent was not preserved. We further conclude that Defendant has made a prima facie showing of ineffective assistance of counsel. Accordingly, we remand this matter to the district court for a hearing on Defendant's claim of ineffective assistance of counsel and any further proceedings consistent with the district court's determination on that claim.

## BACKGROUND

**{3}** The following factual background is based on testimony presented at the hearing on Defendant's motion to suppress. Sergeant Farrah Simmons of the Albuquerque Police Department, a training officer, and her trainee, Officer Joslyn Archuleta,[1] responded to a reported disturbance at Defendant's apartment. Because Officer Archuleta was relatively inexperienced, Sergeant Simmons requested a third officer act as her backup and was joined by Officer Brian Price. The disturbance had been reported by Defendant's neighbor, who wished to remain anonymous, but did speak with Sergeant Simmons about the circumstances that led to the report. According to Sergeant Simmons, the neighbor said that Defendant's apartment had "a lot of foot traffic . . . all night long" and that people had mistaken her apartment for Defendant's and knocked on her door asking to buy narcotics. The neighbor also reportedly told Sergeant Simmons that she believed that she had observed prostitution and drug use at Defendant's apartment, among other things.

**{4}** Sergeant Simmons determined that she did not have sufficient information to obtain a warrant to search Defendant's apartment, so she conducted a knock-and-talk. A knock-and-talk, according to Sergeant Simmons's description, involves knocking on the door to ask to speak with the person who answers "about any concerns that you might have." One of the officers knocked on Defendant's door, the door was opened within seconds, and Sergeant Simmons "told [Defendant] that [she] had some concerns that [she] would like to speak with him about and asked him if [she and Officers Archuleta and Price] could come in." According to Sergeant Simmons, Defendant opened the door and allowed her and the other

---

[1] Officer Joslyn Archuleta was married sometime between the incident and the time of her testimony at the suppression hearing. This Opinion will refer to her as Officer Archuleta.

officers to go into the apartment and speak with him.[2]  Once the officers were inside the apartment, Sergeant Simmons began her conversation with Defendant.

**{5}**  Sergeant Simmons observed a gentleman sitting on the couch and asked if anyone else was inside the apartment.  At the suppression hearing, Sergeant Simmons explained that she asked this question "for the purpose of officer safety"[3] and to ensure that, while she was conversing with Defendant, "nobody was going to jump out and surprise us or injure us or harm us in anyway."  Almost immediately after Defendant said that no one else was in the apartment, Sergeant Simmons testified, "the bathroom door [flew] open and . . . a very big guy" came out.  Sergeant Simmons asked again whether anyone else was in the apartment, to which the person who had just left the bathroom said, " 'My girlfriend is here. . . .  She's in the back bedroom, but she's asleep.' "

**{6}**  Upon learning of the girlfriend's presence in the bedroom, Sergeant Simmons stated that she "would go wake" the sleeping woman, noting that she "didn't want to send Officer Price [to do so] because he's a male[.]"  As Sergeant Simmons continued her narrative in this vein, defense counsel objected, stating "None of it is relevant . . . .  We are talking about a knock-and-talk with a contact at the front door.  We're beyond anything at this point that is relevant."  The district court permitted the testimony, and Sergeant Simmons testified that she "walked back to clear the rest of the apartment, make sure there [were] no other people, and [to] contact the female that was asleep on the bed."  Sergeant Simmons testified that she woke the sleeping woman, asked her to get dressed, helped her find something to wear, then walked into the living room where the other occupants of the apartment, were waiting.

**{7}**  As she walked down the hallway toward the bedroom, Sergeant Simmons passed the "galley-style kitchen" in which she observed "a razorblade that had a white crusty substance on it" and "a blue plastic scale . . . that also had a white powdery residue on it."  Based on her training and experience, Sergeant Simmons believed the substance to be cocaine, and a test of the substance confirmed that it was.

**{8}**  After conducting a warrants search on each of the occupants of the apartment and confirming that none of the non-residents "want[ed] to claim" the cocaine, Sergeant Simmons let them leave, and then arrested Defendant for possession of cocaine.  Defendant asked for his jacket, and as Sergeant Simmons checked the jacket for "weapons or anything[,]" she found a "sack of rock cocaine."  A grand jury indicted Defendant on charges

---

[2]  At this point in Sergeant Simmons's  testimony, apparently because the motion to suppress focused on the consent of the police entry into the apartment, the prosecutor asked Sergeant Simmons to focus on "the actual knocking on the door, the opening of the door, and [Defendant] coming to the door."

[3]  The question or significance of officer safety was not raised in the district court, nor was it raised on appeal.  Accordingly, we do not consider it in this Opinion.

of trafficking by possession with intent to distribute cocaine and possession of drug paraphernalia.

**{9}** Defendant did not testify at the hearing on his motion to suppress. His sole witness at the hearing, Jeffrey Manning, was in Defendant's apartment on the day in question. Mr. Manning testified that when the officers knocked on the door and Sergeant Simmons asked if she could go into the apartment, Defendant said, "No[,]" followed by the officer's question, why, to which Defendant responded, "This is [my] space. I don't want you to come in unless you have a search warrant[.]" He testified further that the officers "just came in" after Defendant had told them no. According to Mr. Manning, the officers did not ask to discuss the neighbor's complaint, but rather, Sergeant Simmons asked to speak with Defendant about a cab driver who "had been shot or killed" because someone had called the cab driver from Defendant's address.

**{10}** In closing argument, defense counsel argued that the officers lacked probable cause to perform the knock-and-talk and that they entered Defendant's apartment despite Defendant having said "No" to their requested entry. It is clear from the transcript of the hearing that the district court and the prosecutor understood defense counsel's argument to be limited to the issues of probable cause to conduct a knock-and-talk and whether Defendant consented to the officers' initial entry into his apartment. In its oral ruling from the bench, the district court denied the motion to suppress, providing the following rationale.

> I am not comfortable with the knock-and-talk. I am concerned about it. However, at least based on the testimony of the [s]ergeant, and I did find her to be more credible than the [d]efense witness, she was allowed in and she saw the paraphernalia, et cetera, in plain view. From that perspective, I believe the arrest was lawful and the evidence will not be suppressed.

**{11}** Different from what he argued in the district court, Defendant argues on appeal that his consent to the knock-and-talk permitted the police to enter his living room but not other areas of the apartment, including the hallway from where Sergeant Simmons observed the incriminating evidence. Defendant argues that the district court's suppression ruling should be reversed on this basis. Acknowledging, however, the possibility that the scope-of-consent argument was not preserved for our review, Defendant argues in the alternative that his counsel's failure to move for suppression on the basis that Sergeant Simmons exceeded the scope of consent constituted ineffective assistance of counsel.

**{12}** We hold that Defendant failed to preserve his argument regarding the scope of his consent to search the apartment. We also hold that the record in this case contains sufficient facts to establish a prima facie case that Defendant's counsel was ineffective for failing to move to suppress the evidence on that basis. Accordingly, we remand this matter to the district court for a hearing on Defendant's ineffective assistance of counsel claim and any further proceedings consistent with the district court's determination on that issue.

4

**DISCUSSION**

**I.	Preservation**

**{13}**	"In order to preserve an issue for appeal, it must appear that a ruling or decision by the district court was fairly invoked" in a manner that specifically apprised the district court of the issue and resulted in an intelligent ruling thereon. *State v. Lopez*, 2008-NMCA-002, ¶ 8, 143 N.M. 274, 175 P.3d 942 (internal quotation marks and citation omitted). Among other things, the preservation rule ensures that the opposing party has "a fair opportunity to show why the court should rule in its favor" and it "creates a record from which this Court may make informed decisions." *Id.* (internal quotation marks and citation omitted). This Court "will not reverse the trial court on grounds [that] the trial court was neither asked to consider nor had the opportunity to review." *State v. Aguilar*, 1982-NMCA-116, ¶ 9, 98 N.M. 510, 650 P.2d 32.

**{14}**	The State and Defendant agree that the issue of the scope of Defendant's consent was not raised in the district court. Furthermore, the State contends that it "did not have an opportunity to develop a record specific to [Defendant's] claim" that the officers exceeded the scope of Defendant's consent. Nevertheless, the State argues that the record is sufficient for this Court to review Defendant's claim on the basis that "the State is not prejudiced" by the fact that it was not given an opportunity to refute this claim in the district court.

**{15}**	Specifically, the State argues that because the record includes testimony "regarding the officers' request to enter the apartment, and the reason for their request, as well as Defendant's response[,]" this Court may determine the scope of Defendant's consent and whether Sergeant Simmons acted within the scope of that consent. At the same time, however, the State attempts to rely, to its own advantage, on the absence of factual development in the record in regard to the scope of Defendant's consent. To that end, the State argues that testimony at the suppression hearing did not "clarify the scope of Defendant's consent" and that Defendant did not object when Sergeant Simmons "announced her intention of going into the bedroom to retrieve the sleeping woman." Based on the absence of testimony in regard to the scope of Defendant's consent or whether Defendant objected to Sergeant Simmons's expanded entry into the apartment, the State argues that Defendant "acquiesce[d] in the officer's actions," thus establishing that those actions "were within the scope of Defendant's consent." We are not persuaded by the State's self-serving attempt to benefit from Defendant's failure to preserve the scope-of-consent argument by encouraging this Court to consider the matter while simultaneously assuming and relying upon facts that are not in the record.

**{16}**	Under some circumstances, a narrow suppression argument in the district court will not preclude review of a more broad argument on appeal. *See, e.g.*, *State v. Figueroa*, 2010-NMCA-048, ¶¶ 8-13, 148 N.M. 811, 242 P.3d 378 (considering the defendant's suppression argument notwithstanding the fact that the suppression argument made in the district court was more narrow than that made on appeal because the defendant's arguments were such

that the district court and the prosecution had a fair opportunity to address the issue). Under the circumstances here, however, not only did the district court not have an opportunity to rule upon the issue whether Sergeant Simmons exceeded the scope of Defendant's consent, the absence of evidence from the record in regard to what, if anything, Defendant said or did in response to Sergeant Simmons's announcement that she would go wake the sleeping female in the bedroom precludes effective review of the State's argument. *See Lopez*, 2008-NMCA-002, ¶ 8 (explaining that preservation requires a showing that a ruling or decision by the district court was fairly invoked and that preservation serves to create "a record from which this Court may make informed decisions" (internal quotation marks and citation omitted)).

**{17}** In sum, we conclude that the issue of the scope of Defendant's consent was not preserved for our review, and we do not consider it on appeal. Because Defendant does not argue that the district court erred in determining that he consented to the officers' initial entry, we do not consider the propriety of the district court's denial of his motion to suppress in that regard.

## II.     Ineffective Assistance of Counsel

**{18}** The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel. *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 16, 130 N.M. 179, 21 P.3d 1032. Defendant argues that his trial counsel's failure to move to suppress the evidence on the ground that Sergeant Simmons exceeded the scope of his consent by entering the hallway and the bedroom rendered his counsel's assistance ineffective. He argues that his plea should be vacated and the matter remanded for an evidentiary hearing on his ineffective assistance of counsel claim. We review Defendant's ineffective assistance of counsel claim de novo. *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44.

**{19}** Remand for an evidentiary hearing on a claim of ineffective assistance of counsel "is appropriate only when the record on appeal establishes a prima facie case of ineffective assistance of counsel." *State v. Herrera*, 2001-NMCA-073, ¶ 35, 131 N.M. 22, 33 P.3d 22. A prima facie case is made by showing (1) "that defense counsel's performance fell below the standard of a reasonably competent attorney[,]" and (2) that "due to the deficient performance, the defense was prejudiced." *Patterson*, 2001-NMSC-013, ¶ 17 (internal quotation marks and citation omitted). The two prongs of this test are known as "the reasonableness prong and the prejudice prong." *Id.*

## A.     The Reasonableness Prong

**{20}** Where, as here, the ineffective assistance of counsel claim is premised on counsel's failure to move to suppress evidence, Defendant "must establish that the facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *Id.* ¶ 19.

6

**{21}** Defendant argues that in light of Sergeant Simmons's testimony that she asked if she and the other officers could go into Defendant's apartment to discuss the neighbor's complaints, social norms dictated that she ask permission before proceeding to the bedroom. In other words, Defendant argues that his consent to the officers' entry into his apartment permitted the officers to enter the living room, which was adjacent to the front door, but "[i]t was not an invitation for the officers to walk down the hall and go into his bedroom." Defendant argues that when Sergeant Simmons, in fact, walked down the hall, she exceeded the scope of Defendant's consent; therefore, his counsel should have moved to suppress the evidence on the basis that Sergeant Simmons was not lawfully permitted to be in the hallway from where she saw the evidence in plain view.

**{22}** Defendant's argument implicates two exceptions to the warrant requirement, plain view and consent. *See State v. Bond*, 2011-NMCA-036, ¶ 11, 150 N.M. 451, 261 P.3d 599 (recognizing that warrantless searches and seizures are unconstitutional except in cases involving recognized exceptions including plain view and consent. "Under the plain view exception to the warrant requirement, items may be seized without a warrant if the police officer was lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe that the article seized was evidence of a crime." *State v. Ochoa*, 2004-NMSC-023, ¶ 9, 135 N.M. 781, 93 P.3d 1286. In this case, the incriminating nature of the evidence and whether Sergeant Simmons had probable cause to believe that it was evidence of a crime are not at issue. The relevant question under the plain view doctrine is whether Sergeant Simmons was lawfully in the hallway when she saw the drug-related evidence.

**{23}** Defendant does not appeal the district court's conclusion that Sergeant Simmons "was allowed in" to Defendant's apartment. We interpret the court's ruling and Defendant's failure to challenge it on appeal as conclusively establishing that Defendant voluntarily consented to the officers' entry into his apartment. The relevant issue is whether Sergeant Simmons could have reasonably interpreted that Defendant's consent, given in response to the officers' request to "come in" to speak about "some concerns[,]" encompassed consent to walking through the apartment's hallway and into the bedroom.

**{24}** "The scope of . . . consent is constrained by the bounds of reasonableness[.]" *State v. Garcia*, 1999-NMCA-097, ¶ 13, 127 N.M. 695, 986 P.2d 491 (internal quotation marks and citation omitted). Thus, we consider "what a police officer could reasonably interpret the consent to encompass." *Id.* (internal quotation marks and citation omitted). Conversely, we consider "what the typical reasonable person would have understood to be the scope of his or her consent under the circumstances." *United States v. Pena*, 143 F.3d 1363, 1367-68 (10th Cir. 1998) Reasonableness is measured objectively. *See State v. Ryan*, 2006-NMCA-044, ¶ 30, 139 N.M. 354, 132 P.3d 1040 (noting that "the scope of a search is limited to the consent given, as measured by an objective reasonableness standard").

**{25}** In determining what is or is not reasonable, courts may rely on social norms to guide the inquiry. *See United States v. Mosley*, 454 F.3d 249, 269 (3rd Cir. 2006) ("The

exclusionary rule expresses, inherently and always, a standard of reasonableness that evolves along with . . . social norms."); *see also Florida v. Jardines*, __ U.S.___ , 133 S. Ct. 1409, 1415-16 (2013) (relying on social norms to illustrate that it is reasonable for police to approach a private citizen's home and knock on the door just as "any private citizen might do[,]" but those norms do not permit police to use a trained police dog to explore the area around the home, an activity that if done by a private citizen might inspire the resident to call the police (internal quotation marks and citation omitted)). In this case, Defendant relies on the notion of social norms to argue that his consent to the officers' entry could only reasonably be viewed as an invitation to enter the living room. Specifically, Defendant argues that "an invitation into the living room for a quick chat about a noise complaint" does not constitute "permission to wander throughout the house." We agree.

**{26}** In light of the fact that Sergeant Simmons requested admittance into Defendant's apartment for the purpose of speaking with Defendant about some concerns, her subsequent announcement that she would go wake the sleeping female occupant of Defendant's apartment, and her procession thereafter down the hallway and to the bedroom cannot be viewed as objectively reasonable. To illustrate this point by way of analogy, if a solicitor who gained permission to "come in" to a person's home to "speak with" the resident were to announce that he would round up the sleeping occupants of the home, it would be reasonable to view the solicitor's actions as, at the least, an unacceptable intrusion on privacy. *Cf. id.* at 1415 (relying on the notion of what one would consider socially acceptable behavior by "solicitors, hawkers[,] and peddlers of all kinds" to consider the permissibility of like behavior by police (internal quotation marks and citation omitted)). Thus, assuming that the extent of Defendant's consent was limited to permitting the officers' entry into his apartment for the purpose of speaking with Sergeant Simmons about her concerns, we conclude that the officer's traversal through the hallway and into the bedroom of Defendant's apartment exceeded the "bounds of reasonableness." *See Garcia*, 1999-NMCA-097, ¶ 13 ("The scope of the consent is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass." (internal quotation marks and citation omitted)).

**{27}** While viewing Sergeant Simmons's actions in this case through the lens of social norms helps to illustrate the unreasonableness of her interpretation of the scope of Defendant's consent to her and the other officers' entry, Defendant's argument is further supported by authority. The knock-and-talk investigatory tool is permissible under the New Mexico and United States Constitutions. *See State v. Flores*, 2008-NMCA-074, ¶¶ 8, 14, 16, 144 N.M. 217, 185 P.3d 1067 (recognizing the constitutional permissibility of the knock-and-talk investigatory tool under the United States and New Mexico Constitutions). Yet, answering an officer's knock and consenting to police entry, does not give police free reign to walk through or search a private residence. *See United States v. Curran*, 498 F.2d 30, 33 (9th Cir. 1974) (holding that the officers' expressed purpose of questioning the occupants of a residence "could not extend to [an officer's] movement past [the occupants] into other rooms"); *see* 1 Wayne R. LaFave, Search and Seizure § 2.3(b) (5th ed. 2013) (stating that, in the context of a knock-and-talk investigation, "the mere fact that the door of the house is

8

opened in response to the officer's knock . . . does not mean that the officer is entitled to walk past the person so responding into the interior of the residence").

**{28}** In sum, the record before us supports Defendant's contention that he consented to the officers' entry into his apartment for the purpose of acquiescing to Sergeant Simmons's request to speak with him about her concerns. Assuming that his consent was limited to permitting the officers' entry, Sergeant Simmons's decision to walk down the hallway, from where she saw the drug-related evidence, and into the bedroom exceeded the objectively reasonable scope of Defendant's consent. In light of the foregoing discussion, in addition to the well-established principle that "[t]he privacy of a home is afforded the highest level of protection by our state and federal constitutions[,]" we conclude that a reasonably competent attorney would have moved to suppress on the basis that Sergeant Simmons exceeded the scope of Defendant's consent. *State v. Haidle*, 2012-NMSC-033, ¶ 13, 285 P.3d 668 (internal quotation marks and citation omitted).

**{29}** We are not persuaded by the State's suggestion that Defendant's counsel made the tactical decision to forego a scope-of-consent argument owing to the possibility that "an argument regarding the scope of Defendant's consent would be unavailing." We are not made aware of any rational tactic or strategy that would have caused Defendant's counsel to forego a motion to suppress on a scope-of-consent ground. To the extent the State argues that Defendant consented to a more expansive entry of his apartment, the record on appeal does not support this argument, and this Court will not speculate regarding any expansion of Defendant's consent. *See State v. Vargas*, 2007-NMCA-006, ¶ 31, 140 N.M. 864, 149 P.3d 961 (noting this Court's refusal to speculate regarding other balancing of interests arising during an unannounced forced entry at gunpoint compared with an announced entry into a residence.)

## B. The Prejudice Prong

**{30}** Where a meritorious motion to suppress key evidence could weaken the prosecution's case against the defendant, counsel's failure to make such a motion may prejudicially affect the defendant. *Patterson*, 2001-NMSC-013, ¶¶ 32-33. In cases where the defendant has accepted a plea instead of going to trial, we evaluate the prejudicial effect of his counsel's ineffective assistance by considering whether there is a reasonable probability that, had his counsel moved to suppress the at-issue evidence and been successful, the defendant would have gone to trial instead of entering a plea. *Id.* ¶ 33. In making this determination, we consider the strength of the prosecution's evidence against the defendant aside from the evidence that would be subject to suppression. *Id.* ¶¶ 31-32.

**{31}** In this case, the extent of the State's incriminating evidence against Defendant consisted of the drugs and paraphernalia that were observed by Sergeant Simmons from the hallway of Defendant's apartment and the crack cocaine that the officer found in the pocket of Defendant's jacket just after being arrested for possession of those prior items. Had Defendant's counsel moved to suppress the evidence that was observed in plain view from

9

the hallway on the ground that Sergeant Simmons was not lawfully positioned in the hallway when she observed the evidence, the motion could have resulted in the exclusion of the plainly viewed evidence. *See Ochoa*, 2004-NMSC-023, ¶ 9 (stating that the plain view requirement entails viewing the incriminating evidence from a lawful position). Relatedly, the crack cocaine that was located by Sergeant Simmons in Defendant's jacket may arguably have been excluded as "fruit of the poisonous tree" because without the plainly viewed evidence the officer lacked probable cause to arrest Defendant. *See State v. Montoya*, 2008-NMSC-043, ¶ 12, 144 N.M. 458, 188 P.3d 1209 (recognizing that the "[f]ruit of the poisonous tree doctrine generally requires suppression of . . . evidence obtained after an arrest made without probable cause" (omission in original) (internal quotation marks and citation omitted)).

**{32}** In sum, had Defendant's counsel moved for suppression and had that motion been successful, the full extent of the State's incriminating evidence against Defendant could have been excluded. It hardly bears stating that there is a "reasonable probability" that had Defendant's counsel succeeded in suppressing the evidence against him, he would not have accepted a plea. Under the circumstances of this case, we conclude that Defendant has made a prima facie showing of ineffective assistance of counsel.

**CONCLUSION**

**{33}** We conclude that Defendant has made a prima facie case of ineffective assistance of counsel based on his counsel's failure to move to suppress the incriminating evidence against him. Accordingly, we remand this matter to the district court for a hearing on Defendant's ineffective assistance claim and any further proceedings consistent with the court's determination on that issue. *See Garcia v. State*, 2010-NMSC-023, ¶¶ 28-29, 148 N.M. 414, 237 P.3d 716 (stating that where a defendant has made a prima facie showing of ineffective assistance of counsel on appeal the appellate court may remand "to allow for further development of the issue before the trial court").

**{34}** **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**J. MILES HANISEE, Judge**