This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40545**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**WILLIAM NATHANIEL ODEN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Dustin K. Hunter, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mallory E. Harwood, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Defendant William Oden entered a conditional plea agreement in which he entered a plea of no contest to aggravated driving while under the influence of intoxicating liquor or drugs (fourth offense), contrary to NMSA 1978, Section 66-8-102(D)(1) (2016). Defendant argues (1) the denial of his motion to suppress was error because the arresting deputies either lacked reasonable suspicion to initiate a traffic stop or alternatively stopped Defendant on the basis of pretext; (2) if this Court

determines he did not preserve a pretextual stop claim, his counsel was ineffective for not making one; and (3) the denial of his motion to dismiss was error because the State's purported discovery violation warranted dismissal. We affirm.

**DISCUSSION**

**{2}** Because this is a memorandum opinion and the parties are familiar with the procedural history and facts on appeal, we discuss the facts only as they become necessary to our analysis.

**I.      Motion to Suppress**

**{3}** Defendant argues the district court erred in denying his motion to suppress because the deputies lacked reasonable suspicion for the initial traffic stop, whether in connection to a gunshot the arresting deputies heard, or for speeding. Alternatively, Defendant argues that speeding was a pretext for an investigation into the gunshot, for which there was no reasonable suspicion to suspect Defendant's involvement.

**{4}** "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted). "Our review of a district court's determination of whether reasonable suspicion existed is de novo based on the totality of the circumstances." *State v. Leyva*, 2011-NMSC-009, ¶ 30, 149 N.M. 435, 250 P.3d 861. When reviewing the totality of the circumstances, we "must avoid reweighing individual factors in isolation." *State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186. In doing so, we view the facts "in a manner most favorable to the prevailing party," indulge all reasonable inferences in support of the court's decision, and disregard all inferences or evidence to the contrary. *State v. Werner*, 1994-NMSC-025, ¶ 10, 117 N.M. 315, 871 P.2d 971 (internal quotation marks and citation omitted).

**{5}** An officer may develop reasonable suspicion based on "specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Simpson*, 2016-NMCA-070, ¶ 11, 388 P.3d 277 (internal quotation marks and citation omitted). "The level of suspicion required for an investigatory stop is considerably less than proof of wrongdoing by a preponderance of the evidence." *State v. Urioste*, 2002-NMSC-023, ¶ 10, 132 N.M. 592, 52 P.3d 964 (internal quotation marks and citation omitted).

**{6}** The district court concluded that the arresting deputies had "reasonable suspicion to believe that Defendant may have fired a gun from his vehicle" because they saw him speeding in an otherwise unoccupied area immediately after hearing a gunshot. The district court further concluded, "the gunshot caused the [d]eputies to focus their attention on the only other person/vehicle on the road at the time the shot was fired. Deputies then followed Defendant . . . . During the time that L[ieutenant

James] Mason was behind Defendant . . ., L[ieutenant] Mason personally observed Defendant exceeding the posted speed limit, providing another basis to stop Defendant based upon the reasonable suspicion that he was violating the traffic laws of the State of New Mexico."

**{7}**  Defendant contests the district court's factual findings regarding the geographical area in which the events took place and claims that the evidence presented demonstrates that Defendant could not have fired the shot. As such, Defendant claims the district court did not have substantial evidence to conclude that the officers had reasonable suspicion to believe Defendant had fired a gun from his vehicle. Defendant otherwise claims the deputies lacked reasonable suspicion to stop his vehicle because there was no objective proof that he was, in fact, speeding.

**{8}**  At the hearing on the motion to suppress, two officers testified that they heard a single gunshot in close proximity. Deputy Padilla testified that immediately after the gunshot, she heard Lieutenant Mason over the radio stating that a vehicle was traveling at a high rate of speed in the area. Deputy Padilla looked up and saw the same vehicle traveling at a high rate of speed westbound. Lieutenant Mason testified that within seconds of hearing a gunshot he immediately saw a vehicle heading west, that aside from other officers, there were no other vehicles in the area, that he pursued the vehicle but had a difficult time catching up to the vehicle, which was being driven "absolutely over the speed limit."

**{9}**  The evidence set forth above supports the arresting deputies' reasonable suspicion that Defendant may have just fired a shot from his vehicle. Each of the testifying deputies confirmed they heard a single gunshot nearby and saw Defendant speeding past immediately thereafter in an otherwise unoccupied area. *Cf. State v. Wing*, 2022-NMCA-016, ¶ 12, 505 P.3d 905 ("When viewed in conjunction with all the circumstances known to an officer, proximity to the scene of a recent crime may prove significant in determining the reasonableness of a suspicion."); *State v. Lovato*, 1991-NMCA-083, ¶ 12, 112 N.M. 517, 817 P.2d 251 (concluding that the officers had reasonable suspicion to pull over a vehicle that matched the description of a car involved in a shooting in the same vicinity, at a time when there were no other vehicles driving in the area); *State v. Ortiz*, 2017-NMCA-006, ¶¶ 14-15, 387 P.3d 323 (concluding that an officer had reasonable suspicion to stop the defendant where, notwithstanding the lack of suspect's description, the defendant was the only person in the vicinity of a recent report of suspicious activity).

**{10}**  Defendant challenges the district court's factual findings regarding the geography of the area and argues that the direction from which the gunshot and the vehicle came, with a proper understanding of the geography, Defendant necessarily could not have fired the shot. The district court did not find that the deputies believed Defendant to be coming from the direction of the shot—just that the shot that they heard was close by and saw Defendant drive by immediately at a high rate of speed thereafter when no other vehicles were in the area. Given the timing and deserted area, the deputies had

reason to believe that the vehicle they saw speeding away was connected to the gunshot they had just heard.

**{11}** Further, the deputies had independent reasonable suspicion to believe Defendant had committed a traffic offense—traveling above the speed limit. *Cf. State v. Vandenberg*, 2003-NMSC-030, ¶¶ 7, 21, 134 N.M. 566, 81 P.3d 19 (concluding that an officer had reasonable suspicion to stop a car for "traveling at an unsafe speed, 35 miles per hour in a 25 miles per hour construction zone"). Although Defendant appears to question the deputies' testimony because they did not have objective proof that he was speeding, the district court, acting as fact-finder, properly relied on the deputies' physical observations. *See State v. Sanders*, 1994-NMSC-043, ¶ 13, 117 N.M. 452, 872 P.2d 870 (concluding that we will only reject testimony that a fact-finder believed "if there is a physical impossibility that the statements are true or the falsity of the statement is apparent without resort to inferences or deductions"). We therefore affirm the district court's denial of Defendant's motion to suppress because the officers had reasonable suspicion to pull him over either in connection with the first gunshot and/or for speeding.

**{12}** Defendant offers the alternative argument that the district court should have granted the motion to suppress because speeding was a pretext for an investigation into the gunshot. "A pretextual traffic stop is a detention supportable by reasonable suspicion or probable cause to believe that a traffic offense has occurred, but is executed as a pretense to pursue a hunch, a different more serious investigative agenda for which there is no reasonable suspicion or probable cause." *State v. Ochoa*, 2009-NMCA-002, ¶ 25, 146 N.M. 32, 206 P.3d 143 (internal quotation marks omitted). Preservation is routinely required for claims of pretext. *See Schuster v. N.M. Dep't of Tax'n & Revenue*, 2012-NMSC-025, ¶ 33, 283 P.3d 288 (addressing whether the appellant preserved his pretext argument); *State v. Scharff*, 2012-NMCA-087, ¶ 19, 284 P.3d 447 (determining the defendant's pretext argument was not adequately preserved because no testimony was elicited indicating that the traffic stop was a result of pretext, the issue was not raised during the suppression hearing, and no ruling by the district court was invoked). In determining whether a stop was pretextual, a district court must "consider the totality of the circumstances, judge the credibility of witnesses, [and] weigh the evidence . . . [including] the objective reasonableness of an officer's actions and the subjective intent of the officer[s]." *Ochoa*, 2009-NMCA-002, ¶ 39.

**{13}** The State requests we disregard this claim because it was not preserved. *See* Rule 12-321(A) NMRA. Defendant claims that he preserved this argument in his motion to suppress when he noted that the arresting deputies "were bored, all gathered together visiting and looking for something when they hear[d] a gunshot. Any person driving by on a US highway or a busy street was subject to be stopped and arrested by them." Defendant otherwise claims he raised the argument in his proposed findings of facts after the district court issued its oral ruling denying the motion to suppress, where he claimed "[t]he investigation in this matter was not for speeding, [or] erratic driving[,] but the investigation of a discharge of a firearm."

**{14}** Defendant based his motion to suppress on a claim that the officers lacked reasonable suspicion to effect a traffic stop. A pretext argument is based on an initial conclusion that there is reasonable suspicion, but that reasonable suspicion is subterfuge for another investigation for which there is no reasonable suspicion. *Ochoa*, 2009-NMCA-002, ¶ 39. While we agree with Defendant that he could have made this argument in the alternative, the record reflects only that he argued that the deputies lacked reasonable suspicion and did not include an additional alternative argument. Defendant's motion to suppress does not use the term "pretext," does not cite to any relevant authority regarding pretextual stops in New Mexico, and does not develop an argument placing the district court on notice that he was claiming to be the subject of a pretextual stop. Defendant's proposed findings of fact fare no better. Ultimately, Defendant did not invoke a pretextual stop ruling from the district court. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 ("[I]t is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the [district] court to the claimed error or errors, and that a ruling thereon then be invoked." (internal quotation marks and citation omitted)). We decline to address this unpreserved issue further.

## II. Ineffective Assistance of Counsel

**{15}** Alternatively, Defendant argues counsel was ineffective for failing to preserve a pretextual stop argument. "We review claims of ineffective assistance de novo." *State v. Rivas*, 2017-NMSC-022, ¶ 23, 398 P.3d 299. "[T]here is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Garcia*, 2011-NMSC-003, ¶ 33, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). "Remand for an evidentiary hearing on a claim of ineffective assistance of counsel is appropriate only when the record on appeal establishes a prima facie case of ineffective assistance of counsel." *State v. Mosley*, 2014-NMCA-094, ¶ 19, 335 P.3d 244 (internal quotation marks and citation omitted). "A prima facie case is made by showing (1) that defense counsel's performance fell below the standard of a reasonably competent attorney, and (2) that due to the deficient performance, the defense was prejudiced." *Id.* (text only) (citation omitted).

**{16}** Here, Defendant did not raise a pretextual stop argument below and the record regarding a pretextual stop is not developed. *State v. Arrendondo*, 2012-NMSC-013, ¶ 38, 278 P.3d 517 ("The record [on appeal] is frequently insufficient to establish whether an action taken by defense counsel was reasonable or if it caused prejudice."). Based on the forgoing we decline to address Defendant's ineffective assistance of counsel claim.

**{17}** Our holding does not preclude Defendant from raising an ineffective assistance of counsel claim in a habeas corpus proceeding. *See State v. Bernal*, 2006-NMSC-050, ¶ 33, 140 N.M. 644, 146 P.3d 289 ("Rather than remand the case to the trial court for further hearings, [the New Mexico Supreme] Court has a general preference that such claims be brought and resolved through habeas corpus proceedings.").

### III. Motion to Dismiss

**{18}** Defendant argues the district court abused its discretion by declining to dismiss the case as a sanction for alleged discovery violations. The district court "has the discretion to impose sanctions for the violation of a discovery order that results in prejudice to the opposing party." *State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25. An abuse of discretion occurs when the "ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "In reviewing the district court's decision, this Court views the evidence—and all inferences to be drawn from the evidence—in the light most favorable to the district court's decision." *State v. Le Mier*, 2017-NMSC-017, ¶ 22, 394 P.3d 959.

**{19}** In order to impose a sanction, a district court must assess "(1) the culpability of the offending party, (2) the prejudice to the adversely affected party, and (3) the availability of lesser sanctions." *Id.* ¶ 15. "Extreme sanctions such as dismissal are to be used only in exceptional cases." *Harper*, 2011-NMSC-044, ¶ 16 (internal quotation marks and citation omitted).

**{20}** Here, Defendant filed a motion to dismiss sixteen days before trial, claiming that the State committed a discovery violation by failing to disclose lapel or dashcam video from all of the officers present when he was arrested. Defendant asserted that he had only been provided with one lapel video, but a local news station had published a story about his arrest using footage from multiple deputies. The district court held a hearing on the motion to dismiss, where Defendant argued that the missing video recordings would have shown Defendant was not speeding when deputies pulled him over. In response, the State argued that it assumed it had disclosed all the videos, had otherwise made efforts to obtain all pertinent footage, and any nondisclosure resulted from technical errors that occurred upon transferring the videos from one electronic database system to another. The district court denied the motion to dismiss because the State did not act in bad faith, and offered the lesser sanction of continuing the trial, requiring the State to produce any missing videos, and releasing Defendant from pretrial detention.

**{21}** Nearly one year after the hearing on the motion to dismiss, the district court issued a written order denying the motion, "but reserve[d] jurisdiction to grant any of the requested relief at a later date for any reason, including if the [c]ourt's orders are not complied with and full discovery made." The district court further ruled that if any discovery issues remained, "counsel should request a hearing on the issue so that the [c]ourt can consider evidence and argument and make a final determination regarding the videos." Finally, the order stated that "[f]ailure to request a hearing on any discovery disputes prior to resolution—trial or [c]hange of [p]lea, will be considered by the [c]ourt to be a knowing waiver."

**{22}** We conclude that the district court acted within its discretion by denying Defendant's motion to dismiss because he failed to establish the requisite prejudice to justify the extreme sanction of dismissal. The district court imposed the lesser sanction

of releasing Defendant and continuing the trial to allow time for the State to produce the missing videos. Nearly a year passed before the district court issued its final ruling denying Defendant's motion to dismiss, again ordering the State to produce the videos and allowing Defendant to seek further recourse as necessary. While it appears Defendant never received additional videos, he made no further demands for sanctions or evidentiary hearings on the discovery issue, and ultimately entered a conditional plea several months after the district court's written order was entered. We decline to speculate whether the missing videos contained exculpatory evidence when Defendant failed to accept the district court's invitation to seek further sanctions. *See id.* ("Prejudice must be more than speculative; the party claiming prejudice must prove prejudice—it is not enough to simply assert prejudice.").

**CONCLUSION**

**{23}**    For the foregoing reasons, we affirm.

**{24}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KATHERINE A. WRAY, Judge**

**MICHAEL D. BUSTAMANTE, Judge,**
**retired, Sitting by designation**