This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41584

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**JASON CERVANTES-PONCE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**R. David Pederson, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Eric Orona, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Jason Cervantes-Ponce appeals his conviction of trafficking a controlled substance by possession with intent to distribute, contrary to NMSA 1978, Section 30-31-20(A)(3) (2006). Defendant, who was subject to a routine traffic stop for speeding that developed into a vehicle search for suspected contraband, advances several arguments urging that the drugs found in the vehicle he was driving should have been suppressed. In pertinent part, Defendant asserts that the consent he gave to

search the vehicle was coerced. Defendant acknowledges that this argument was not preserved but argues that his attorney's failure to raise it below amounts to ineffective assistance of counsel. For the reasons set forth, we conclude that Defendant has established a prima facie case of ineffective assistance of counsel. We therefore remand this matter to the district court for a hearing on this claim and any further proceedings consistent with the district court's resulting determination.

**BACKGROUND**

{2}     Defendant was driving a blue, two-door Ford Mustang on Interstate 40 near the Arizona border during daylight hours. A deputy sheriff with the McKinley County Sheriff's Office, Deputy Salazar, was patrolling the highway in his department-issued patrol vehicle and noticed the Mustang was traveling above the speed limit and had an expired registration. Deputy Salazar pulled the Mustang over to the side of the highway. Deputy Salazar then approached the Mustang and notified the occupants of the reasons for the stop. Inside the Mustang sat Defendant, in the driver's seat, along with two passengers, a male and a female, who were seated in the rear passenger seats.

{3}     Upon Deputy Salazar's request, Defendant produced an identification card—that was not a valid driver's license—and informed Deputy Salazar that he had an active arrest warrant for an unrelated traffic matter. Defendant told the deputy that he could not immediately produce evidence of registration and insurance for the Mustang. Both Defendant and the male passenger, Juan Morales, stated that Morales owned the Mustang. Deputy Salazar then told Defendant to accompany him back to his patrol vehicle while Deputy Salazar filled out a "warning citation" for speeding, and the other occupants located proof of registration and insurance for the Mustang. Both throughout the traffic stop and later during the suppression hearing, Deputy Salazar spoke of his belief that Morales was heavily intoxicated at the time of the stop.

{4}     During the traffic stop, Deputy Salazar spoke separately with Defendant while he was in Deputy Salazar's patrol vehicle, and Morales remained in the Mustang. Defendant and Morales told Deputy Salazar conflicting stories about their travel history and how they had gotten to be where they were. Deputy Salazar also confirmed the existence of a warrant for Defendant's arrest and learned that the Mustang was registered to a third party not present and did not know if the vehicle was stolen. Nonetheless, Deputy Salazar concluded the traffic stop by issuing Defendant a "warning citation" and telling Defendant he was "free to go."

{5}     However, almost immediately after Defendant left the patrol vehicle, Deputy Salazar leaned out of the vehicle and stated, "Hey [Defendant]. Do you mind if I ask you a couple questions before you take off? You can have a seat back inside. It's cold, if you want." Defendant returned to the patrol vehicle, sitting in the passenger seat next to Deputy Salazar. Once inside, Deputy Salazar stated that he asked Defendant to come back in because it was cold outside and again asked Defendant, "You understand you're free to go right now?" Defendant responded, "Yes, sir." Deputy Salazar continued, stating that he had a few questions for Defendant, "if that's cool." Deputy

Salazar then asked Defendant another series of questions, touching initially on the difference between Defendant's and Morales's description of their travel history, where the trio were coming from, and how long they had been there. To this end, Deputy Salazar asked, "You guys drove the [Mustang] all the way to Phoenix, and you're coming back?" Defendant responded, "Yes, sir." Deputy Salazar continued, asking, "You guys didn't catch a bus, [or] anything like that?" Defendant stated, "No, sir," which contradicted Morales's version of events.

{6}     Deputy Salazar then began asking Defendant pointed questions about potential criminal conduct, including whether various types of illegal drugs were in the Mustang. The following interaction occurred:

Deputy Salazar:     Is there anything illegal in the [Mustang]?

Defendant:     No, sir.

. . . .

Deputy Salazar:     Would it be cool if I search the [Mustang]?

Defendant:     Well that's [Morales's] car.

Deputy Salazar:     Well I'm asking you. You're the driver. You're responsible for it.

Defendant:     Well . . . there's nothing in there but if he gives you a go, you're more than welcome.

. . . .

Deputy Salazar:     With [Morales] intoxicated [and] you operating the [Mustang], that makes you in charge of the [Mustang], so that's why I'm asking you. Is it okay if I search the [Mustang]?

Defendant:     Well, like I said that's his car.

Deputy Salazar:     And like I explained, [Morales is] intoxicated, so now you're the sober one. That's why I'm asking you.

Defendant:     I don't know. . . . You can literally just ask [Morales]. He'll give you the yes or no. I don't think it'll be an issue.

. . . .

Deputy Salazar:     So based off of interacting with you, interacting with [Morales] when I was asking him for information on the [Mustang], you guys' stories don't match whatsoever, which makes me believe that you do have something illegal in the [Mustang]. . . . So there's two options. Like I said, I want to let you know, so you . . . can be able to make a decision on your own. There's two options: one, you . . . can grant consent to search the [Mustang] . . .; two, I can apply for a search warrant.

Defendant:          You're going to apply?

Deputy Salazar:     Yup.

{7}    Defendant continued to suggest that Deputy Salazar ask Morales, and Deputy Salazar continued to explain that he was not going to ask Morales for the same reasons he stated above. The exchange then continued as follows:

Deputy Salazar:     If you say no, I can't search the [Mustang]—which is completely your option—I'm going to detain all three of you guys, and I'm going to apply for a search warrant.

Defendant:          Okay. Well my answer is no, but you could apply for a search warrant. But . . . just ask [Morales]. . . . There's no other way. . . . [Morales will] tell you yes . . . right away.

Deputy Salazar:     Alright. Here's what I will allow you guys to do. I'm going to bring [Morales] back here to talk to you. I'll let him talk to you. And then at that point, you can give me the answer. Okay?

Defendant:          Yes, sir.

{8}    Deputy Salazar then brought Morales from the Mustang to his patrol vehicle and explained the situation to Morales. Morales and Defendant briefly discussed the matter with each other, albeit with Deputy Salazar standing directly next to them. At one point during the discussion, Defendant told Morales, "Just do it. Why not? . . . Either way, they're going to do it." The conversation ended somewhat abruptly without a clear expression of consent from Morales. Morales did, however, agree to go sit in a patrol vehicle while the deputies performed the search. Deputy Salazar then read a consent to search form aloud to Defendant, and Defendant signed the form.

**{9}** Deputy Salazar and another deputy then searched the Mustang and discovered, in pertinent part, a red backpack in the rear passenger area of the Mustang near where the female passenger had been sitting. The deputies then searched the backpack and discovered a firearm and approximately 3,000 pills that Deputy Salazar believed to contain fentanyl.

**{10}** Defendant later moved to suppress the evidence found during the search, arguing that he was unlawfully seized after the traffic stop concluded and that Defendant's consent to search did not extend to the red backpack. The district court denied the motion, finding, in pertinent part and despite lack of argument on the issue of consent, that Defendant's consent was "knowing, voluntary, and intelligent" and that it was "not the product of any force or coercion exerted upon him by Deputy Salazar." Defendant appeals.

## DISCUSSION

**{11}** On appeal, Defendant challenges the validity of his consent to search but acknowledges that this argument was not preserved below. Generally, we "will not reverse the trial court on grounds that the trial court was neither asked to consider nor had the opportunity to review." *State v. Mosley*, 2014-NMCA-094, ¶ 13, 335 P.3d 244 (alteration, internal quotation marks, and citation omitted); *see also* Rule 12-321(A) NMRA (requiring that an issue be preserved for an appellate court to address it). Defendant further does not argue that any exception to the preservation requirement applies. Under such circumstances, both our Supreme Court and this Court have declined to address an issue that we might otherwise consider. *See State v. Joanna V.*, 2003-NMCA-100, ¶ 10, 134 N.M. 232, 75 P.3d 832 ("[W]e will not review the issues [presented] because they were not properly preserved and there is no argument on appeal that the exceptions apply."); *see also State v. Jason F.*, 1998-NMSC-010, ¶ 10, 125 N.M. 111, 957 P.2d 1145 (stating that since the appellant did not argue an exception to the preservation requirement applied to the case, "none of the exceptions . . . are at issue").

**{12}** Nonetheless, Defendant alternatively argues that his counsel's failure to contest the lawfulness of his consent in district court amounts to ineffective assistance of counsel. He asserts that the issue of the validity of his consent offered "viable grounds for suppression" and that his attorney should have raised it. Often, the record is insufficiently developed to resolve a claim of ineffective assistance on direct appeal. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition." (internal quotation marks and citation omitted)). However, when the record on appeal establishes a prima facie case of ineffective assistance, remand for an evidentiary hearing on this claim is appropriate. *See Mosley*, 2014-NMCA-094, ¶ 19. "A prima facie case is made if [the d]efendant produces enough evidence to allow the fact-trier to infer the fact at issue and rule in [the d]efendant's favor." *Crocco*, 2014-NMSC-016, ¶ 14 (internal quotation marks and citation omitted). We, therefore, consider Defendant's arguments regarding the

lawfulness of Defendant's consent through the lens of ineffective assistance of counsel. Specifically, we must determine whether the evidence in the record would allow a fact-finder to infer "(1) that defense counsel's performance fell below the standard of a reasonably competent attorney, and (2) that due to the deficient performance, the defense was prejudiced." *Mosley*, 2014-NMCA-094, ¶ 19 (text only) (citation omitted). "The two prongs of this test are known as 'the reasonableness prong and the prejudice prong.'" *Id.* (quoting *Patterson v. LeMaster*, 2001-NMSC-013, ¶ 17, 130 N.M. 179, 21 P.3d 1032, *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, 478 P.3d 880). "When a plausible, rational strategy or tactic can explain the conduct of defense counsel, we cannot conclude that trial counsel erred." *Crocco*, 2014-NMSC-016, ¶ 15 (text only) (citation omitted). We review ineffective assistance of counsel claims de novo. *Mosley*, 2014-NMCA-094, ¶ 18.

## I.     The Reasonableness Prong

**{13}**     "Where, as here, the ineffective assistance of counsel claim is premised on counsel's failure to move to suppress evidence, [a d]efendant must establish that the facts support the motion to suppress and that a reasonably competent attorney could not have decided that such a motion was unwarranted." *Id.* ¶ 20 (internal quotation marks and citation omitted). Thus, we must determine if the facts of this case warrant a motion to suppress on the basis of involuntary consent. *See Crocco*, 2014-NMSC-016, ¶ 15 ("A trial counsel is not incompetent for failing to make a motion when the record does not support the motion." (internal quotation marks and citation omitted)).

**{14}**     Law enforcement may conduct a search of a suspect's property under two circumstances: (1) if the officers have a search warrant, or (2) through an applicable exception to the warrant requirement. *See State v. Bond*, 2011-NMCA-036, ¶ 11, 150 N.M. 451, 261 P.3d 599 ("Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable, subject only to well-delineated exceptions. . . . In order to prove that a warrantless seizure is reasonable, the [s]tate must prove that it fits into an exception to the warrant requirement." (internal quotation marks and citations omitted)). In this case, Deputy Salazar did not obtain a search warrant for the Mustang, and the only applicable exception to the warrant requirement is Defendant's consent. *See State v. Flores*, 2008-NMCA-074, ¶ 12, 144 N.M. 217, 185 P.3d 1067 ("One of the settled exceptions to the warrant requirement is consent.").

**{15}**     "The voluntariness of consent is a factual question in which the trial court must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary." *State v. Davis*, 2013-NMSC-028, ¶¶ 10, 13, 304 P.3d 10 (internal quotation marks and citation omitted). On appeal, "[f]actual questions are viewed under a substantial evidence standard, and the application of law to the facts de novo." *Id.* "Courts utilize a three-tiered analysis when determining voluntariness: (1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first

two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Id.* ¶ 14 (internal quotation marks and citation omitted). While there are sometimes "[s]pecific factors indicating coercion," such as "the use of force, brandishing of weapons, threat of violence or arrest, lengthy and abusive questioning, deprivation of food or water and promises of leniency in exchange for consent," *id.* ¶ 23, "[u]ltimately, the essential inquiry is whether the defendant's will has been overborne." *Id.* ¶ 14 (internal quotation marks and citation omitted). "The [s]tate has the burden of proving that, under the totality of the circumstances, consent to search was given freely and voluntarily." *Id.* ¶ 13.

**{16}** Defendant points out that when he consented he was on the side of the highway with nowhere to go; he was supposedly free to leave but then given the choice to consent to a search or be detained; he repeatedly and expressly refused to consent, but Deputy Salazar kept asking until he signed the consent form with no audible expression of consent; Deputy Salazar pressured Morales into consenting during their conversation; and Deputy Salazar did not have probable cause to obtain a search warrant when the deputy stated that he would apply for one.

**{17}** The State responds by asserting that Defendant's refusals to consent seemed to be based on his belief that he could not consent—because Morales owned the Mustang, not Defendant—rather than on his own desire that the Mustang not be searched. The State further argues that Deputy Salazar's presentation of two choices, consent or face detention and application for a search warrant, was intended to inform Defendant of his "precise legal situation," which does not amount to coercion. *See State v. Shaulis-Powell*, 1999-NMCA-090, ¶ 11, 127 N.M. 667, 986 P.2d 463 (stating that it is not coercive for an officer to "accurately inform [an] individual of his precise legal situation," including stating that the individual can either consent to a search or a search warrant would be sought (alteration, internal quotation marks, and citation omitted)). Finally, the State points out that Defendant was repeatedly informed that it was his right to refuse to consent.

**{18}** We conclude that a fact-finder could reasonably conclude, based on the evidence in the record at this juncture in the proceedings, that Defendant's consent was obtained through coercion and that Defendant has therefore made a prima facie case as to the performance prong. Defendant repeatedly refused to consent to the search, but by the time Deputy Salazar presented him with two options, Defendant could no longer leave the scene. Despite Deputy Salazar's assertions that Defendant was free to leave, the evidence in the record on appeal would allow a fact-finder to infer that at the time Defendant was asked for consent to search the Mustang, Defendant had been seized. *See State v. Garcia*, 2009-NMSC-046, ¶ 37, 147 N.M. 134, 217 P.3d 1032 (stating that "as long as the person to whom the officer's questions are put remains free to disregard the questions and walk away, no seizure has occurred." (text only) (citation omitted)). Indeed, the only options conveyed to Defendant by Deputy Salazar were to consent to the search (thus, being forced to remain nearby) or be detained while the deputy applied for a search warrant.

**{19}** The State points to *Shaulis-Powell* to suggest that the choices presented by Deputy Salazar merely informed Defendant of his "precise legal situation." 1999-NMCA-090, ¶ 11 (internal quotation marks and citation omitted). However, based on the record before us, it appears that *Shaulis-Powell* is distinguishable from this case. There, the suspect was approached by officers while he was in his home and, similar to this case, told he could consent to a search of his property or the officers "would seek to obtain a warrant." *Id.* ¶¶ 2-4. Nonetheless, this Court noted that throughout the suspect's interaction with police, he was "not in custody and [was] free to leave at any time." *See id.* ¶ 16. While law enforcement officers may inform suspects that if they do not consent to a search a search warrant will be sought, the State offers us no case and we can find none where such an "assessment of the situation," *id.* ¶ 11, is accompanied by the threat or effectuation of imminent detention. *See id.* ¶ 16; *see also Davis*, 2013-NMSC-028, ¶ 26 (stating that the defendant "was still allowed to move about freely"). Based on the record before us, the options Deputy Salazar afforded Defendant do not appear to be merely an assessment of the situation pertaining to how officers would seek to search the Mustang. Rather, Deputy Salazar presented Defendant with options of consenting or being detained. These facts appear to weigh in favor of a finding of coercion, and an evidentiary hearing is necessary to further develop the record to determine whether Defendant's consent was voluntary or coerced and to determine whether any rational strategy justified defense counsel's decision not to challenge the validity of Defendant's consent.

**{20}** We acknowledge the principle that "[a] reasonable explanation of the possibility of arrest and the process that will follow, or an officer's belief in his or her ability to obtain a warrant is permissible and neither constitutes coercion or invalidates consent." *Davis*, 2013-NMSC-028, ¶ 24. Nonetheless, the circumstances surrounding Defendant's consent and the traffic stop in general also appear to be indicative of the presence of coercion or duress based on the record before us. Defendant was stopped on the side of the highway with nowhere to go. As discussed above, it does not appear that Defendant was free to leave when Deputy Salazar told Defendant he could consent or be detained. Defendant also repeatedly refused to consent but ultimately signed the form after repeated requests to do so. Indeed, Defendant's statement to Morales, made directly in front of Deputy Salazar, was to the effect that Morales should consent because the deputy was going to search the Mustang "either way," which could support a finding that Defendant subjectively believed that the search was inevitable. *Cf. id.* ¶ 23 ("[C]onsent is not voluntary if it is a mere acquiescence to a claim of lawful authority." (internal quotation marks and citation omitted)).

**{21}** We reiterate that, in considering the voluntariness of a given consent to search, the "essential inquiry is whether the defendant's will has been overborne." *Id.* ¶ 14 (text only) (citation omitted). Here, considering the totality of these circumstances based on the evidence in the record on direct appeal, viewed in light of the presumption against waiver of constitutional rights, would allow a fact-finder to find that Defendant's will was overborne during the interaction with Deputy Salazar. *See Davis*, 2013-NMSC-028, ¶ 14. Thus, the record before us reveals that the voluntariness of Defendant's consent was doubtful from the start, and contesting its validity was one of the most likely

avenues to achieve suppression. As such, we conclude that a "reasonably competent attorney could not have decided that such a motion was unwarranted." *Mosley*, 2014-NMCA-094, ¶ 20 (internal quotation marks and citation omitted).

## II.      The Prejudice Prong

**{22}**     "Where a meritorious motion to suppress key evidence could weaken the prosecution's case against the defendant, counsel's failure to make such a motion may prejudicially affect the defendant." *Id.* ¶ 30. "A defense is prejudiced if, as a result of the deficient performance, there was a reasonable probability that the result of the trial would have been different." *State v. Bello*, 2017-NMCA-049, ¶ 23, 399 P.3d 380 (text only) (citation omitted). "A reasonable probability is one that is sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citation omitted). Here, as our above discussion indicates, defense counsel's failure to challenge the validity of Defendant's consent constitutes deficient performance. Furthermore, had such a motion been made and had the drugs found in the Mustang been suppressed, the outcome of Defendant's trial would undoubtedly be different. *Cf. Mosley*, 2014-NMCA-094, ¶ 32 ("It hardly bears stating that there is a 'reasonable probability' that had [the d]efendant's counsel succeeded in suppressing the evidence against him, he would not have accepted a plea."). Defendant's guilt for trafficking a controlled substance is inseparable from the fentanyl pills he now seeks to have suppressed. As such, Defendant was prejudiced by his counsel's failure to raise the issue.

**{23}**     For the foregoing reasons, we hold that Defendant has established a prima facie case of ineffective assistance of counsel based on his attorney's failure to challenge the validity of his consent. We therefore remand to the district court to hold a hearing during which both parties are afforded an opportunity to present evidence and argument about whether it was reasonable for defense counsel not to challenge the validity of Defendant's consent and whether the decision not to make such a challenge was prejudicial to Defendant.

## CONCLUSION

**{24}**     For the reasons set forth, we remand this case to the district court to hold an evidentiary hearing on Defendant's ineffective assistance of counsel claim and further proceedings consistent with its determination on that issue.

**{25}    IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**